[Nos. 13291-9-III; 13432-6-III.    Division Three.    March 16, 1995.]

*In the Matter of the Custody of*
ANDREA NICOLE ANDERSON.

DARLENE A. ANDERSON, *Appellant*, v. BRADLEY RINGE,
ET AL, *Respondents.*

*Robin M. Bale* of *Spokane Legal Services Center* and *George I. Diana,* for appellant.

*Kenneth D. Beckley,* for respondents.

SCHULTHEIS, J. — In this child custody action commenced by nonparents, Kittitas County Superior Court granted custody of Andrea Anderson to her paternal aunt and uncle, LaDell "Cookie" and Bradley Ringe. The child's mother, Darlene Anderson, challenges the custody decision and the size of the court's attorney fees award. We reverse in part and affirm in part.

In May 1988 Darlene Anderson married Keith "Kip" Anderson, gave birth to their daughter Andrea in October, and separated from Keith in November. In 1989 Mr. Anderson filed for dissolution of the marriage in Spokane County. The consensual dissolution decree entered in July 1990 awarded Ms. Anderson primary residential care of Andrea and required that the child's visitation with Mr. Anderson be supervised.[1] Motivated by fear of Mr. Anderson and concern that he was being allowed unsupervised visitation, Ms. Anderson moved with Andrea to Alaska in August 1990 without notifying Mr. Anderson.

With the assistance of his family, Mr. Anderson located Ms. Anderson and obtained an order holding her in contempt. As a result of court proceedings in Spokane and Alaska, Mr. Anderson, his mother, and his sister Cookie Ringe retrieved Andrea from Alaska in May 1991 and returned with her to Ellensburg. With Mr. Anderson's consent, Andrea was placed temporarily with the Ringes. Before the trip to Alaska, Mrs. Ringe had met the child once; Mr. Ringe had never met her. Ms. Anderson returned to Wash-

---

[1]Mr. Anderson is a diagnosed chronic paranoid schizophrenic. He abuses alcohol and drugs. He has trouble controlling himself when he goes off his medication and acknowledged threatening Ms. Anderson during their marriage and telling her that he had molested a niece and nephew when he was a teenager.

ington as soon as she was financially able, in August 1991, to seek the return of her daughter.

On August 20 the Ringes commenced this custody action in Kittitas County.[2] They retained temporary custody of Andrea throughout the lengthy proceedings, although Ms. Anderson was eventually given limited visitation privileges. Although Ms. Anderson moved for appointment of a guardian ad litem (GAL) for Andrea in December 1991, and the court granted the motion in February 1992, a GAL was not actually retained until December 1992. In her report completed February 8, 1993, GAL Connie Schieche concluded Ms. Anderson is a fit parent and recommended Andrea be returned to her custody, although the Ringes offered the child a loving home and stable environment. In the GAL's words, "[i]f one were to look for a perfect couple to raise a young child, one could not do better than Brad and Cookie Ringe."

After trial in February 1993 the court declined to follow the GAL's recommendation. It concluded the GAL had prematurely ended her inquiry once she determined Ms. Anderson was a fit parent. In its March 1993 memorandum decision, the court recognized Ms. Anderson's priority right to the custody of her daughter absent proof she is either unfit or that placement of Andrea with her would detrimentally affect the child's growth and development. *In re Stell*, 56 Wn. App. 356, 364-65, 783 P.2d 615 (1989). The court concedes Ms. Anderson is currently a fit and loving parent, but after comparing Ms. Anderson with the Ringes, it decided the Ringes could offer Andrea a superior home environment and a greater opportunity for optimum growth and development. Consistent findings of fact, conclusions of law and placement decree were entered April 23, 1993. The court

---

[2]RCW 26.10.030(1) provides:

"Except as authorized for proceedings brought under chapter 26.50 RCW in district or municipal courts, a child custody proceeding is commenced in the superior court by a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian."

reserved for a future hearing the issue of attorney fees and costs. Later, it awarded Ms. Anderson $1,200, a sum which it increased to $2,600 on reconsideration. Ms. Anderson timely appealed both decisions and the appeals were consolidated.[3]

Ms. Anderson first contends the court abused its discretion by removing Andrea from her custody and placing her with the Ringes. We agree.

In custody disputes between parents, a court properly compares the merits of the parents and awards custody to the parent offering the child the better home environment. *In re Marriage of Allen*, 28 Wn. App. 637, 645, 648, 626 P.2d 16 (1981). Natural parents, however, have a constitutionally protected priority right to the custody of their children, *Stell*, at 365; *Allen*, at 646, which cannot be abridged by state action "absent a powerful countervailing interest", *Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). Between a parent and a nonparent, therefore, a more stringent balancing test is required to justify awarding custody to the nonparent. *Allen*, at 645-46. The nonparent seeking custody must establish either that the parent is unfit or "that 'circumstances are such that the child's growth and development would be detrimentally affected by placement with an otherwise fit parent' ". *Stell*, at 365 (quoting *Allen*, at 647). "There must be a showing of actual detriment to the child, something greater than the comparative and balancing analyses of the 'best interests of the child' test. Precisely what might outweigh parental rights must be determined on a case-by-case basis." *Allen*, at 649.

Here the detriment found by the court is, essentially, that Andrea will no longer enjoy the superior environment offered by the Ringes, one which benefited her for the 2 years it took to bring this case to trial. The court concluded from its findings of fact and the testimony at trial, in conclusion of law 2,

---

[3]The court has considered the Ringes' motion to supplement the record, made after oral argument, and the motion is denied.

that the stability provided by Petitioners Ringe; the Ringes' basic value system as it relates to each other, their children, and the community; their mode of discipline by means of positive reinforcement; their family orientation and understanding of the growth and development of a child and the adaption of the parenting skills and attention to that growth and development; their participation in their children['s] activities; the presence of their extended families; and their love for Andrea Anderson outweigh the factual data and legal conclusions drawn from the factual data that natural mother, Darlene Anderson, is the natural mother and has a special bond and genuine love and affection for her daughter, Andrea Anderson; that she cares very deeply for her daughter; and that she is motivated to help herself and better herself in providing a wholesome atmosphere for Andrea. Placement of Andrea Anderson with Darlene Anderson would restrict the stability, family orientation, consistent discipline, reinforced values, and the opportunity to provide Andrea Anderson with a very mature set of very loving and affectionate parents (and not intended to be in the nature of a representation as natural parents), and the continuation of the growth and stability that Andrea has evidenced since May 1, 1991.

The court commended Ms. Anderson for her achievements and her dedication to improving herself, but concluded, in conclusion of law 3,

Darlene Anderson's past exhibition of grave instability in not being able to raise her other children, in going to Alaska to avoid a perceived problem, in moving from location to location within Alaska, and in lack of a definite plan for the present, would render her ability to care for Andrea less than satisfactory and would retard, interfere, and detrimentally affect the present and future growth and development that Andrea Anderson has experienced and will continue to experience with Petitioners Ringe. Furthermore, the Court concludes that the action of Darlene Anderson in accepting back into her home her estranged daughter, Raquel Trillo, and the intent of Darlene Anderson to re-establish a mother-daughter relationship with Raquel Trillo will require substantial prayer, energy, counseling, and time.

With the foregoing in mind the Court specifically concludes that placement of Andrea Anderson with natural mother, Darlene Anderson, would detrimentally affect Andrea Anderson's present and future growth and development.

■ In a nutshell, the court concedes Ms. Anderson loves her daughter, tries hard and is a fit parent, but firmly be-

lieves it has found a much better set of parents for Andrea, people with a good record who can offer the child a lot of things her mother cannot. That does not satisfy the need for "something greater" than a balancing of the merits of the Ringes as parents against Ms. Anderson's merits as a parent nor is it a "powerful countervailing interest" justifying state interference with the parent/child relationship. The court cannot properly substitute for a finding of actual detriment to the child, its finding that returning Andrea to her mother will deprive her of all the wonderful opportunities available to her as a member of the Ringe family.[4] In the absence of a finding that returning Andrea to her mother would be, by itself, an actual detriment to the child, the court abused its discretion by placing the child in the custody of the nonparent Petitioners.

Ms. Anderson contends the trial court also abused its discretion by awarding her only $2,600 in attorney fees and costs, when she requested $14,777.34.[5] She argues the court's award bears so little relationship to the actual cost of necessary legal services and the relative financial positions of the parties that it constitutes an abuse of discretion. We are constrained to disagree.

■■ The size of an attorney fees award is within the trial court's discretion, as is the initial decision whether to award fees. *See, e.g., Allen*, at 649-50. In making its determination the court must consider the financial resources of the parties, RCW 26.10.080, and the reasonableness of the fees. The court did so.

The trial court found George Diana's charges were reasonable. It then balanced Ms. Anderson's need for assistance

---

[4]*See In re Coverdell*, 39 Wn. App. 887, 891, 696 P.2d 1241 (citing *In re Tarango*, 23 Wn. App. 126, 130, 595 P.2d 552, *review denied*, 92 Wn.2d 1022 (1979); *In re Schulz*, 17 Wn. App. 134, 139, 561 P.2d 1122 (1977)), *review denied*, 102 Wn.2d 1009 (1984).

[5]From August 31, 1992, when he first became involved, through trial, and until the first week of May 1993, when he itemized his hours for the court's hearing on the matter, attorney George Diana expended 125.083 hours on the case. At his rate of $110 per hour, that yielded a billing of $13,759.17. In addition, he had advanced costs and expenses totaling $1,379.17. After deducting $361 Ms. Anderson had paid, there was an outstanding balance of $14,777.34.

with her legal bills against the Ringes' ability to pay. The court concluded:

> In doing that balancing, it is obvious that Ms. Anderson does not have the resources to pay her attorney and that she, therefore, has a need for assistance. It is also clear, however, the Ringes do not have a deep pocket and, while they have a comfortable lifestyle, do not have the ability to pay all of the fees and costs requested[.] [W]ith some imposition on their budget, however, the Ringes do have a modest ability to pay some fees.

It ordered the Ringes to pay Mr. Diana $2,600 for their total contribution. In a footnote, the court indicated it believed Mr. Diana should not have to absorb any of the costs he advanced, and that of the money being paid by the Ringes, $1,200 should go toward his fees. Considering the fact the Ringes had previously been ordered to pay $500 to Ms. Anderson's previous attorney Richard Bueschel, and would have to pay their own attorney, we cannot say the award is a clear abuse of discretion even though we would have awarded a larger sum.[6]

RCW 26.10.080 authorizes this court, "in its discretion, [to] order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs. The court may order that the attorney's fees be paid directly to the attorney who may enforce the order in his or her own name." Spokane Legal Services Center represents Ms. Anderson in the appeal of the custody decision, and her trial attorney Mr. Diana represents Ms. Anderson in the appeal of the court's award of attorney fees. Both request an award of fees on appeal. Because Legal Services Center is representing Ms. Anderson without charge to her, she has no need for contribution toward the cost of that representation; we must deny the Center's request. We be-

---

[6]Given the important rights at issue in these proceedings, Ms. Anderson was justified in fighting the Ringes as aggressively and thoroughly as she could. We understand that small fee awards in circumstances such as these make it more difficult for people in Ms. Anderson's position to obtain adequate representation in our legal system. We commend those members of the legal profession who vigorously represent indigent clients, knowing that they may never be fully compensated for their efforts, and encourage others to share the burden so that there truly may be "liberty and justice for all".

lieve the Ringes have the ability to contribute a reasonable amount toward Mr. Diana's additional fees on appeal; we grant his request.

The decision granting custody of Andrea to the Ringes is reversed and the placement decree is vacated. The trial court's award of attorney fees is affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 127 Wn. 2d 1007 (1995).