IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Custody of: | ) | No. 31933-4-III |
| | ) | |
| C.D.,[†] | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| ARTHUR D. LERITZ and | ) | |
| DESIREE L. MILLER, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| and | ) | PUBLISHED OPINION |
| | ) | |
| CHRISTOPHER R. DEBURRA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| ANTOINETTE SHAFER, | ) | |
| | ) | |
| Defendant. | ) | |

LAWRENCE-BERREY, J. — A trial court granted nonparental custody of C.D. to his

maternal aunt and uncle after finding that returning C.D. to his parents would result in

---

[†] For purposes of this opinion, the minor child's initials are used in place of his
name.

actual detriment to the child's growth and development. C.D.'s father, Christopher DeBurra, appeals the custody award. He contends that the evidence is insufficient to establish that he is an unfit parent. He also contends that the trial court erred in denying his request for a continuance on the morning of the trial and that the guardian ad litem (GAL) failed to fulfill her duties under the superior court guardian ad litem rules (GALR). We disagree with his contentions and affirm.

## FACTS

Mr. DeBurra and Antoinette Shafer are biological parents of C.D., born January 27, 2003. Mr. DeBurra and Ms. Shafer have a long history of domestic violence that C.D. observed. Both parents also have an extensive history with child protective services (CPS). In 2004, Ms. Shafer was granted primary residential placement of C.D.

Throughout C.D.'s young life, Mr. DeBurra continually, but unsuccessfully, sought to obtain custody of C.D. According to Ms. Shafer, the years of court action affected C.D., causing behavior problems in school, bed wetting, and obsessions with picking his fingers and collecting paper. In 2011, Ms. Shafer took C.D. to a treatment facility for threatening to commit suicide.

In March or April 2012, CPS was called to investigate two claims of sexual abuse. One claim involved C.D. as the alleged victim and his father's 13-year-old neighbor as

2

the alleged perpetrator. The other claim involved C.D. as the alleged perpetrator and his two-year-old half-brother as the alleged victim. Because C.D.'s half-brother lived with C.D. and his mother, and also because an allegation arose that Mr. DeBurra had hit C.D., C.D. could not live with either of his biological parents. Rather, C.D. was temporarily placed with his maternal aunt and uncle, Desiree Miller and Arthur Leritz.

On April 24, 2012, C.D.'s maternal aunt and uncle petitioned for nonparental custody of C.D. The court appointed a GAL to determine whether adequate cause existed for the petition to proceed. The court also ordered an evaluation of C.D. Ms. Shafer supported her sister and brother-in-law's petition, but Mr. DeBurra did not.

On July 12, 2012, an order was entered appointing Laura Hughes as GAL for the purpose of determining whether adequate cause existed to proceed. Ms. Hughes interviewed the biological parents, Dr. Barry Nyman (C.D.'s counselor), one of C.D.'s teachers, various other witnesses, and C.D. Her December 20, 2012 report concluded that there was adequate cause to proceed with the nonparental custody action. Rather than contest the report, Mr. DeBurra authorized his attorney to approve entry of an order finding adequate cause. This order was entered February 5, 2013.

Also on February 6, Ms. Hughes filed a motion seeking to be discharged as GAL. In her declaration in support of her motion, she explained that she had fulfilled the limited

3

role assigned to her by the court and that she did not want "to have [her] appointment expanded to include a full investigation as a conflict ha[d] developed which [she felt] would impede [her] ability to continue as guardian ad litem." Clerk's Papers (CP) at 41. Ms. Hughes did not elaborate on this conflict. Nor did she ever describe it as a "conflict of interest." Although the record is silent on the nature of the conflict, the maternal aunt and uncle asserted that "it was [Mr. DeBurra's] attorney's conduct towards the guardian ad litem after the issuance of the report . . . that caused the conflict." Br. of Resp't at 6-7.

The court held a status conference on June 26, 2013. Present were Matthew Dudley for the aunt and uncle, and Gary Stenzel for Mr. DeBurra. One purpose of the status conference was to discuss Mr. Stenzel's recent notice of withdrawal and to obtain contact information for Mr. DeBurra. At the hearing, the court asked Mr. Stenzel whether Mr. DeBurra could be ready if the trial was set to commence July 22, 2013. Mr. Stenzel advised the court that Mr. DeBurra was speaking to lawyers who might represent him. The court inquired about C.D. and was advised that he was doing well. The court stated that it would not be inclined to continue the trial if there was any disruption going on. The court advised the parties that it was setting the trial to commence July 22, but that because of a preplanned vacation for the weeks of July 8 and 15, any request for a continuance must be made by July 3. Mr. Stenzel stated that he would e-mail his client

4

concerning the importance of securing replacement counsel promptly, and that the court would not be inclined to continue the trial date if a conflict involving C.D. needed to be resolved.

Mr. DeBurra did not request a continuance by July 3. Instead, Mr. DeBurra appeared pro se at the July 22 trial and verbally requested a continuance so he could prepare for trial. He informed the court that he severed ties with Mr. Stenzel because Mr. Stenzel had failed to perform, including not putting Mr. DeBurra's witnesses on the witness list. Mr. DeBurra told the court that Mr. Stenzel did e-mail him the day of the June 26, 2013 status conference and told Mr. DeBurra of the July 22 trial date and his need to secure counsel promptly. Nevertheless, he had not secured new counsel and requested a continuance to prepare and gather evidence and witnesses. Mr. DeBurra did not identify who these witnesses might be or what the witnesses and undisclosed evidence would establish.

The aunt and uncle contested the continuance request. Their counsel, Mr. Dudley, explained to the court that he had been in contact with Mr. DeBurra to complete the trial management report, and "Mr. DeBurra told me he was ready." Report of Proceedings (RP) (July 22, 2013) at 7. On July 9, 2013, however, Mr. DeBurra informed Mr. Dudley in an e-mail exchange that he would be requesting a continuance so he could present

evidence that had not been disclosed through discovery. Mr. Dudley responded that he would be objecting to the undisclosed evidence. Mr. Dudley informed the court that his clients who lived in Lake Stevens, Washington, had traveled from their home to Spokane and were present for trial. He also advised the court that the GAL was scheduled for court at 10:30 a.m. that morning, and that Dr. Nyman was scheduled for court at 1:30 p.m. that afternoon.

The trial court inquired of Ms. Shafer. She stated that Mr. DeBurra's continuance request was typical and that he had done "it to me for nine years over and over and over; continuance, continuance, continuances on motions that he filed." RP (July 22, 2013) at 9. The trial court inquired of Ms. Shafer whether she was ready for trial. She answered that she was ready. The trial court denied Mr. DeBurra's continuance request, primarily due to its untimeliness.

At the hearing, the petitioners entered a declaration from Karen Winston, a program director and forensic interview specialist at Partners with Families and Children Child Advocacy Center. Ms. Winston interviewed C.D. at the request of the Spokane Police Department on April 4, 2012. Ms. Winston stated that C.D. described the sexual abuse at the hands of his 13-year-old neighbor who was a friend of his mother and father. C.D. also reported that his mother had hit him, slapped him, and pulled his hair in an

6

attempt to tell her about behavior she believed to be sexual that occurred between C.D. and his younger half-brother. C.D. denied this behavior.

Ms. Winston also said that C.D. was afraid of his father and did not want to live with him because he had been hit while staying with him. Ms. Winston recommended that C.D. be placed in a stable and accepting living situation and be thoroughly evaluated to determine the best course of therapy for treatment. Ms. Winston noted that C.D. needed to work through his feelings of not being wanted by his parents and his fears of living with them.

Dr. Barry Nyman, C.D.'s counselor, testified and submitted a report. Dr. Nyman told the court that C.D. reported being punched, pinched, and called bad names by his father. According to C.D., he did not report his abuse to other counselors because Mr. DeBurra threatened worse punishment and removal from his mother's care. C.D. also reported to Dr. Nyman that he was sexually abused by his father's 13-year-old neighbor for a period of two years, and that his father forced him to see the neighbor despite telling his father of the abuse.

Dr. Nyman recommended that C.D. remain with the maternal aunt and uncle and testified that actual detriment would come to C.D.'s emotional health if forced to live with his father. He stated that C.D. improved significantly between consultations. Dr.

Nyman determined that C.D.'s propensity to lie was reduced greatly since his first evaluation.

The GAL's report from the adequate cause investigation was admitted. The report addressed C.D.'s relationships with his parents. When the GAL first asked C.D. whether he felt safe in his father's care, C.D. responded that he absolutely did not and likened the situation to the devil standing behind him with a knife to his throat. Six months later, when asked again if he would like to return to his father, C.D. stated that he would rather die. The GAL noted that C.D.'s one supervised visit with his father did not go well. Mr. DeBurra asked inappropriate questions and pressured C.D. for answers. After the visit, C.D. was very emotional, acted out, was physically sick, and had significant diarrhea.

The GAL reported that Mr. DeBurra did not believe that C.D. was ever sexually abused while in his care. Mr. DeBurra also denied ever physically disciplining his son. He described significant concerns with Ms. Shafer and believed what occurred with C.D. happened while in her care.

The GAL reported that Ms. Shafer's supervised visit with C.D. went okay. Ms. Shafer was open and honest with the GAL during her interview and expressed concern over what happened with C.D. while with his father. The GAL found that Ms. Shafer was ready to support her son in any way.

The GAL also testified at the hearing. The GAL said that during her investigation, she reviewed a report made by a previous GAL and the CPS records. She also conducted interviews of Dr. Nyman, C.D.'s teacher, and the persons involved in the custody dispute. The GAL said that C.D. was a damaged child, a fact that Mr. DeBurra failed to recognize. The GAL also noted that C.D. was making significant progress during the time in the maternal aunt and uncle's care and in therapy with Dr. Nyman. The GAL said that C.D. was absolutely frightened of being returned to his father.

Mr. DeBurra filed a declaration with the court and testified at the hearing. In his declaration, he stated that despite his criminal history, he was not an unfit father and that the aunt and uncle were not better custodians for C.D. Mr. DeBurra said that C.D. loves him and considers the house that Mr. DeBurra shares with his own mother to be home. During Mr. DeBurra's testimony, he disputed witness accounts that he did not believe C.D. about the sexual assault. He also said that he only spanked C.D. twice in his life, felt guilty about it, and it was not a beating. On the positive side, Mr. DeBurra listed the activities that he and C.D. participated in and said that they had a great time together. He said that C.D. was the single most important thing in the world to him.

The court granted the maternal aunt and uncle's nonparental custody petition. The court found that it would be detrimental to C.D. to be placed with either parent because of

the severity of the harm that was caused. The court also found that C.D. suffered from long-term physical and emotional abuse by both parents resulting in significant emotional disturbance as a result of parental conflict and as a result of emotional battering by the father and possibly by the mother. Moreover, the court found that C.D. improved significantly under the care of his maternal aunt and uncle, and that continuing care with them is probably the only thing that would address the significant damage to C.D. Finally, the court found that Mr. DeBurra refused to believe C.D.'s disclosure of ongoing sexual abuse, did not protect C.D., and exposed him to further sexual abuse. The court concluded that it would be in the best interest of C.D. to reside with his maternal aunt and uncle. The court entered an order prohibiting contact between C.D. and either of his parents until such time as recommended by C.D.'s therapist.

Mr. DeBurra appeals. He challenges the court's finding that he is an unfit parent. He also contends that the trial court violated his right to due process by failing to grant a continuance and that the GAL failed to fulfill her duties under the GALR superior court rules.

ANALYSIS

A.   *Whether the trial court abused its discretion in granting nonparental custody to Ms. Miller and Mr. Leritz*

We review a trial court's custody disposition for a manifest abuse of discretion. *In re Custody of Stell*, 56 Wn. App. 356, 366, 783 P.2d 615 (1989). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." *In re Custody of S.H.B.*, 118 Wn. App. 71, 78-79, 74 P.3d 674 (2003), *aff'd*, 153 Wn.2d 646, 105 P.3d 991 (2005). "Appellate courts are generally reluctant to disturb a child custody disposition because of the trial court's unique opportunity to personally observe the parties." *Stell*, 56 Wn. App. at 366.  A trial court's findings of fact will be upheld if supported by substantial evidence. *S.H.B.*, 118 Wn. App. at 79.

Nonparents may petition a court for custody of a child. RCW 26.10.030. In such actions, a more stringent test than "the best interest of the child" approach is required. *Stell*, 56 Wn. App. at 364-65.[1] The nonparent must show either (1) parental unfitness, or (2) that the child's growth and development would be detrimentally affected by placement with an otherwise fit parent. *In re Marriage of Allen*, 28 Wn. App. 637, 646-47, 626 P.2d 16 (1981). "The test adopted by the *Allen* court acknowledges the constitutional right to

---

[1] In custody disputes between parents, the best interests of the child standard is used to determine placement. RCW 26.10.100.

11

privacy implicated in custody disputes and establishes a test which is sensitive to both a biological parent's rights and the needs of a child." *Stell*, 56 Wn. App. at 365.

> [I]n extraordinary circumstances, where placing the child with an otherwise fit parent would be detrimental to the child, the parent's right to custody is outweighed by the State's interest in the child's welfare. There must be a showing of actual detriment to the child, something greater than the comparative and balancing analyses of the "best interests of the child" test. Precisely what might outweigh parental rights must be determined on a case-by-case basis. But unfitness of the parent need not be shown.

*In re Custody of Shields*, 157 Wn.2d 126, 143, 136 P.3d 117 (2006) (quoting *Allen*, 28 Wn. App. at 649). Evidence that the nonparent can provide a more comfortable living environment is insufficient alone to establish a detrimental effect on the child if returned to the parent. *In re Custody of Anderson*, 77 Wn. App. 261, 264, 890 P.2d 525 (1995).

Here, Mr. DeBurra contends that the trial court abused its discretion by awarding nonparental custody to the maternal aunt and uncle because the evidence did not establish that he was an unfit parent. However, the finding of unfitness was not necessary to grant nonparental custody. The court also granted nonparental custody because it found that C.D. would be detrimentally affected by placement with either Mr. DeBurra or Ms. Shafer. Mr. DeBurra does not challenge this finding or the court's other factual findings to support nonparental custody. "Unchallenged findings are verities on appeal." *In re Marriage of Possinger*, 105 Wn. App. 326, 338, 19 P.3d 1109 (2001).

12

The evidence supports the order of nonparental custody based on the actual detriment standard. Placing C.D. with either parent would detrimentally affect C.D.'s growth and development. C.D. suffered significant distress from the long-term emotional abuse and potentially physical abuse inflicted by his parents. C.D.'s distress manifested itself in many ways, including through C.D.'s threats of suicide and his behavior. C.D. went to his maternal aunt and uncle as a damaged child.

However, after C.D. was placed with his maternal aunt and uncle, he made significant gains toward recovery. If returned to his father, C.D. has threatened to run away or kill himself. Both the GAL and Dr. Nyman strongly recommended that C.D. remain in the care of his maternal aunt and uncle. Substantial evidence supports the trial court's finding that C.D. would be detrimentally affected if he was returned to either parent. The trial court, therefore, did not abuse its discretion in awarding nonparental custody to the aunt and uncle.

B.     *Whether Mr. DeBurra was denied due process when the trial court refused to continue the trial*

Mr. DeBurra contends that the parent-child relationship is a liberty interest protected by the due process clause of the Fourteenth Amendment, and that the trial court's refusal to grant his requested continuance was a violation of his due process rights.

13

We review a decision to deny a continuance for a manifest abuse of discretion. *In re Dependency of V.R.R.*, 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). "In deciding a motion to continue, the trial court takes into account a number of factors, including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." *Dependency of V.R.R.*, 134 Wn. App. at 581 (citing *City of Tacoma v. Bishop*, 82 Wn. App. 850, 861, 920 P.2d 214 (1996)). When denial of a continuance request allegedly violates due process rights, the appellant must show either prejudice from the denial or that the trial result would have been different had the continuance been granted. *State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994).

*In re Welfare of R.H.*, 176 Wn. App. 419, 425-26, 309 P.3d 620 (2013) explained:

> Parents have a fundamental liberty and privacy interest in the care and custody of their children. Because of the constitutional interests at stake in a termination proceeding, parents are afforded greater due process rights than in dependency proceedings or other proceedings to determine the custody or placement of children . . . .
> In contrast [to "the best interests of the children" standard applicable in nontermination cases, a court] may terminate parental rights only when the State has proved the six statutory factors in RCW 13.34.180(1)(a)-(f) by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i). Because of the parents' fundamental constitutional rights at stake in termination

14

hearings, due process requires that parents have the ability to present all relevant evidence for the . . . court to consider prior to terminating a parent's rights.

(Citations omitted) (footnote omitted).

We first note that this case is not a termination case. Mr. DeBurra's parental rights were not terminated nor was his ability to see C.D. meaningfully changed. Prior to the petition for nonparental custody, Mr. DeBurra did not have custody. The only meaningful change in Mr. DeBurra's ability to see C.D. was that it now is dependent on the recommendation of C.D.'s therapist.

We, therefore, review the trial court's refusal to grant a continuance under the more deferential, general standard of abuse of discretion. Here, the trial court did not abuse its discretion. Mr. DeBurra failed to explain what evidence he wished to obtain or how this evidence would impact the factual issues at trial. We will not speculate that the evidence that he wished additional time to obtain would be material. Moreover, despite being advised of the need to request a continuance by July 3, 2013, Mr. DeBurra waited until the morning of trial on July 22 to request a continuance. His request was made after the aunt and uncle had arrived from Lake Stevens and after two professional witnesses had cleared their schedules for trial later that day. Given all this, the trial court did not abuse its discretion in denying Mr. DeBurra's continuance request.

C.    *Whether the GAL failed to properly execute her duties as outlined in the GALR superior court rules*

Mr. DeBurra contends that the GAL failed to properly execute her duties as outlined by the GALR superior court rules. In particular, Mr. DeBurra contends that the GAL did not maintain independence as required by GALR 2(b), did not avoid conflicts of interest as required by GALR 2(e), was not informed about the facts of the case as required by GALR 2(g), and did not timely inform the court about relevant information as required by GALR 2(i).

We find no error with the GAL's performance. The GAL clearly explained to all parties involved that her role was to look into the limited issue of whether adequate cause existed to move forward with the nonparental custody action. The GAL interviewed C.D.'s parents, the aunt and uncle, C.D.'s therapist, and reviewed the report made by a previous GAL. The GAL submitted a written report to the trial court. After she issued the report, she requested to be discharged from the case rather than have her duties expanded because an unspecified "conflict ha[d] developed." CP at 41. The GAL properly executed her duties as required by the GALR superior court rules.

16

No. 31933-4-III
*In re Custody of C.D.*

Affirm.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Brown, J.