# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Custody of:

M.K.W.

KIMBERLY KAY SWIMM,

Respondent,

v.

ANGELA MARIE ZUEHL,

Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 76215-0-I

UNPUBLISHED OPINION

FILED: November 20, 2017

DWYER, J. — Angela Zuehl appeals from the trial court's order granting nonparental custody of her daughter, M.K.W., to Kimberly Swimm. Concluding that the trial court applied the incorrect burden of proof, relied on past conduct as a substitute for current fitness, and erroneously focused on the best interest standard to find detriment, we reverse.

I

M.K.W. was born to Angela Zuehl and Charles Walters in 2007. M.K.W. has two half-sisters—her older sister lives with Zuehl's maternal grandmother

and her younger sister lives with Zuehl and her partner, Christopher Scott, in Tillamook, Oregon.

In 2011, Zuehl and Walters were homeless and addicted to drugs while caring for M.K.W. Child Protective Services intervened and removed M.K.W. from their care, placing her with her paternal grandmother, Kimberly Swimm. Walters entered a drug treatment program shortly thereafter and, in 2013, was able to regain custody of M.K.W. Unfortunately, Walters relapsed two years later and voluntarily returned M.K.W. to Swimm's care. M.K.W. has lived with Swimm continuously since September 2015.

Once M.K.W. was returned to her care, Swimm filed a petition for nonparental custody. A superior court commissioner issued an order finding adequate cause for a hearing.[1] The commissioner noted that the order was "[n]ot based on mother being currently unfit but based on the court's belief that the move to Oregon would be detrimental to the child." The parties were ordered to adhere to the residential schedule for visitation that they agreed to following M.K.W.'s removal in 2011.

Trial was held on December 14, 2016. Swimm and Zuehl represented themselves. The trial court heard testimony from several of M.K.W.'s grandparents and great-grandparents regarding Zuehl's ability to care for M.K.W. The trial court also heard testimony from Swimm, Zuehl, and Scott.

---

[1] Zuehl does not challenge the order of adequate cause. But this does not preclude her from appealing the final order granting the nonparental custody petition. In re Custody of A.L.D., 191 Wn. App. 474, 498, 363 P.3d 604 (2015).

- 2 -

Swimm testified that Zuehl and Walters had been transient for years before she first obtained custody of M.K.W. Swimm testified that Zuehl had a history of drug and alcohol addiction as well as an extensive criminal record. Swimm provided the trial court with several police reports in support of her testimony. Swimm testified that Zuehl was required to undergo urinalysis tests (UAs) at the discretion of her probation officer. Swimm testified that she had spoken to Zuehl's probation officer and that she was told that Zuehl had not failed any UAs.

Swimm also testified as to her experience caring for M.K.W. Swimm testified that M.K.W. attends therapy to help her cope with her parents' drug use and absence. Swimm testified that M.K.W. participates in extracurricular activities, does well in school, has close friends, and is happy. Swimm testified that she was worried about what would happen to M.K.W. if she were forced to leave her routine to live with her mother in Oregon.

Swimm's husband, Jeff Santose, also testified at trial. Santose testified that M.K.W. does well living with him and Swimm. Santose testified that he had "no clue" what M.K.W.'s life in Oregon was like. Santose testified that Zuehl and Scott pay M.K.W. an allowance for doing household chores and that he did not believe that a child should be doing chores. Santose testified that, when M.K.W. would return home after visiting her mother, she would be happy sometimes and depressed other times.

Scott offered testimony as to his relationship with Zuehl. Scott testified that he and Zuehl moved to Tillamook County in September 2014. Scott testified

that he and Zuehl moved to the City of Tillamook in January 2016. Scott testified that Zuehl attends school full time, works part time, sees her counselor every week, attends bible study, takes parenting classes, and occasionally attends narcotics anonymous meetings. Scott testified that Zuehl was a very good mother to their 11-month-old daughter. Scott also testified as to M.K.W.'s experiences visiting Zuehl in Oregon. Scott testified that M.K.W. has her own room, her own things, has friends in the community, has responsibilities at home, and has a place to attend counseling.

Scott testified that Zuehl relapsed sometime in 2014. By the time that Scott noticed that Zuehl had started using drugs she had stolen money from him and fled from their home in Oregon. Scott testified that he cooperated with the police to file a felony charge against Zuehl. Scott testified that Zuehl became pregnant with their daughter sometime in April and started getting sober by June 2015. Scott testified that Zuehl went to jail and then transitioned to House of Grace[2] in July 2015, where she stayed until May 2016. Scott testified that, after leaving House of Grace, Zuehl missed a mandatory counseling appointment and failed to report her absence to her probation officer. Scott testified that he could not trust Zuehl to tell him if she started using drugs again.

Zuehl offered testimony as to her progress in overcoming addiction and establishing a stable environment for her children. Zuehl testified that she had been sober since May 2015. Zuehl testified that she had completed phase one of her drug and alcohol treatment program and that there were no more phases

---

[2] House of Grace is a faith-based home for women who are in recovery from addiction.

to complete in Oregon. Zuehl provided the trial court with two UAs, one taken as recently as September 2016. The UAs were both negative for drug use. Zuehl testified that drug testing was done at the discretion of her probation officer. Zuehl also testified that she had attended 40 narcotics anonymous meetings since she was last incarcerated. Zuehl did not have any documentation to provide the trial court concerning her narcotics anonymous meetings.

Zuehl testified that she was fit to care for M.K.W. Zuehl testified that M.K.W. would have access to a school, family counseling, church, and extracurricular activities while living in Oregon. Zuehl testified that M.K.W. would be physically closer to both of her sisters while living in Oregon than she was while living with Swimm. Finally, Zuehl testified that she continued to make improvements in her life to provide a stable environment for her daughters.

The trial court found that Zuehl had been convicted of forgery on two occasions and that, being crimes of dishonesty, Zuehl's credibility was questionable. The trial court found that Zuehl had made some progress in her stability and sobriety but that it was too premature to know whether her progress would continue. The trial court found that Zuehl had a history of drug abuse, relapses, and failed treatment attempts. The trial court noted that, without evidence of ongoing drug and alcohol treatment, recovery could not be established. The trial court found that Zuehl had not been sober for more than a year.

The trial court also found that Zuehl's living environment was unstable. The trial court found that Zuehl has historically had few jobs, that she has a GED,

and that she "basically lives as she can, and that certainly does not make her a fit parent." The trial court also found that Zuehl's mental health was an issue. The trial court noted that Zuehl provided no evidence as to her diagnosis or treatment and no evidence from which the court could discern whether Zuehl's mental health situation has been overcome or dealt with. The trial court found that this made Zuehl an unfit parent.

The trial court found that Zuehl's "lack of insight as to the detrimental effects of her lifestyle and the impact of the move on the child demonstrates poor parenting judgment and makes her currently parentally unfit." The trial court noted that "it does appear that she is raising an 11 month old appropriately, but that doesn't mean she can raise an elementary school student appropriately." The trial court pointed out that Zuehl and her partner are not married.

The trial court found that Swimm's home was the ideal environment for M.K.W. The trial court noted that, aside from Zuehl, all of M.K.W.'s family resides in Washington and M.K.W. has visitation with her father and sisters while living with Swimm. The trial court found that it was in M.K.W.'s best interest to be placed with Swimm and that M.K.W.'s potential future with her mother was uncertain.

The trial court found by clear, cogent, and convincing evidence that Zuehl was unfit. The trial court also found that, even assuming that Zuehl were fit, the detrimental effects of moving M.K.W. would not be overcome by Zuehl's fitness. Finally, the trial court found that it was in M.K.W.'s best interest to be placed with Swimm. Zuehl now appeals.

II

We review a trial court's custody disposition for an abuse of discretion. In re Custody of C.D., 188 Wn. App. 817, 826, 356 P.3d 211 (2015). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). We uphold a trial court's findings of fact when supported by substantial evidence. C.D., 188 Wn. App. at 826 (citing In re Custody of S.H.B., 118 Wn. App. 71, 79, 74 P.3d 674 (2003)).

Pursuant to RCW 26.10.030, a nonparent may petition a court for custody of a child "if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." Upon filing the petition, the nonparent must obtain a court order of adequate cause. RCW 26.10.032. "[T]he requisite showing [of adequate cause] by the nonparent is substantial and a nonparent will be able to meet this substantial standard in only 'extraordinary circumstances.'" In re Custody of B.M.H., 179 Wn.2d 224, 236, 315 P.3d 470 (2013) (internal quotation marks omitted) (quoting In re Custody of Shields, 157 Wn.2d 126, 145, 136 P.3d 117 (2006)). "To demonstrate adequate cause, the nonparent petitioner must allege specific facts that, if proved true, would establish a prima facie case 'that the parent is unfit or that placing the child with the parent would result in actual detriment to the child's growth and development.'" In re Custody of L.M.S., 187 Wn.2d 567, 576, 387 P.3d 707 (2017) (quoting In re Custody of E.A.T.W., 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)).

"A parent is unfit if he or she cannot meet a child's basic needs." L.M.S., 187 Wn.2d at 576 (citing B.M.H., 179 Wn.2d at 236; RCW 26.44.010 (the state may intervene into the parent-child relationship in "instances of nonaccidental injury, neglect, death, sexual abuse and cruelty to children by their parents . . . and in the instance where a child is deprived of his or her right to conditions of minimal nurture, health, and safety")). "Whether placement with a parent will result in actual detriment to a child's growth and development is a highly fact-specific inquiry, and '[p]recisely what might [constitute actual detriment to] outweigh parental rights must be determined on a case-by-case basis.'" B.M.H., 179 Wn.2d at 236 (alterations in original) (internal quotation marks omitted) (quoting Shields, 157 Wn.2d at 143). Examples include, (1) "when a deaf child needed a caregiver who could effectively communicate with the child and the father was unable to do so," (2) "when a suicidal child required extensive therapy and stability at a level the parents could not provide," and (3) "when a child who had been physically and sexually abused required extensive therapy and stability at a level the parent could not provide." B.M.H., 179 Wn.2d at 236.

"The actual detriment standard does not focus on the best interests of the child." In re Custody of J.E., 189 Wn. App. 175, 185, 356 P.3d 233 (2015). "For example, '[a] nonparent's capacity to provide a superior home environment to that which a parent can offer is not enough to' establish actual detriment." J.E., 189 Wn. App. at 185 (alteration in original) (quoting In re Custody of C.C.M., 149 Wn. App. 184, 204, 202 P.3d 971 (2009)).

A

We begin with an analysis of the trial court's findings related to parental unfitness.

"Nonparental custody cases often involve a young parent who struggles with an addiction or financial independence and gives one or more children to grandparents or other relatives to temporarily raise." In re Custody of A.L.D., 191 Wn. App. 474, 495, 363 P.3d 604 (2015). The "test for fitness of custody is the present condition of the mother and not any future or past conduct." A.L.D., 191 Wn. App. at 506.

The first set of findings made by the trial court relate to Zuehl's drug and alcohol use. The trial court found that Zuehl had a history of substance abuse and relapse. The trial court found that Zuehl had not been sober for more than one year prior to trial and that she had failed to produce evidence proving her recovery. The trial court found that these facts made Zuehl unfit.

We conclude that the trial court erroneously placed the burden on Zuehl to prove current fitness. Contrary to the trial court's findings, the only testimony regarding Zuehl's sobriety came from Zuehl and Scott, who each testified that Zuehl had been sober since May or June 2015. Swimm testified that she had contacted Zuehl's probation officer and was told that Zuehl had not failed any UAs. Zuehl produced two UAs at trial, both of which were negative for drug use. Zuehl produced a certificate of completion for phase one of a drug treatment program. No witness testified that Zuehl had used drugs or alcohol in the 18 or

19 months leading up to trial. Together, this evidence cannot support the trial court's finding that Zuehl had not been sober for more than one year.

Moreover, evidence of Zuehl's past drug use, without more, is insufficient to establish current unfitness. In re Dependency of Brown, 149 Wn.2d 836, 841, 72 P.3d 757 (2003). The burden of proof rested on Swimm to establish by clear, cogent, and convincing evidence that Zuehl was currently unfit. Swimm failed to produce any evidence at trial establishing that Zuehl was currently unfit due to drug or alcohol use. By relying on evidence of past drug use and requiring Zuehl to prove the absence of current drug use, the trial court required Zuehl to prove current fitness. The trial court applied the incorrect burden of proof.[3]

The next set of findings made by the trial court relate to Zuehl's living environment. The trial court found that Zuehl has had few jobs, that she "lives as she can," and that her housing was unstable. The trial court also found that Zuehl's mental health was an issue. The trial court found that these factors made Zuehl currently unfit.

As was the case with Zuehl's drug and alcohol addiction, Zuehl and Scott were the only witnesses to offer testimony as to Zuehl's current living environment. Swimm, Santose, and Walters testified that they had never been to Oregon to see Zuehl. Zuehl and Scott were also the only witnesses to testify regarding Zuehl's current employment. Zuehl and Scott testified that Zuehl is a

---

[3] The trial court found that Zuehl's credibility was questionable. We do not review credibility determinations or weigh evidence on appeal. In re Marriage of Fahey, 164 Wn. App. 42, 62, 262 P.3d 128 (2011). But even if Zuehl's testimony regarding her current sobriety is given no weight, we still conclude that the trial court's finding is unsupportable given the complete absence of evidence that Zuehl had abused drugs or alcohol in the 18 or 19 months leading up to trial.

full time student. Scott testified that Zuehl works part time in addition to attending school.

Zuehl was the only witness to offer testimony regarding her mental health. Zuehl testified that she voluntarily sought mental health treatment for anxiety and that she was taking medication to help manage her anxiety disorder. No witness testified that Zuehl's mental health was a concern or that Zuehl was unfit due to her mental health.

We conclude that the trial court applied the wrong burden of proof in finding that Zuehl's living environment and mental health made her currently unfit. Zuehl moved to Tillamook County in Oregon in September 2014 and has lived there since. Zuehl has been successfully raising a daughter with Scott in Tillamook, attends school full time, and works part time. No witness offered testimony to the contrary. Although Zuehl relapsed and served jail time in the intervening years, she was not incarcerated at the time of trial. Zuehl voluntarily sought mental health treatment for anxiety. No one testified that Zuehl's mental health made her unfit.

No witness testified that Zuehl's living environment was unstable or that Zuehl's mental health was a concern. No witness testified that Zuehl was currently using drugs or alcohol. The only testimony suggesting that Zuehl is unfit focused on past conduct. Nevertheless, the trial court required Zuehl to prove job and housing stability, prove that she had overcome addiction, and prove that her mental health was being properly treated. We note that, in its order finding adequate cause for a hearing, the trial court found that Swimm had

*not* alleged specific facts that, if proved true, would establish a prima facie case that Zuehl was unfit. Yet, at trial, Zuehl was expected to overcome a presumption of unfitness. The trial court erred.

B

We next turn to the trial court's finding that placement with Zuehl would result in detriment to M.K.W.

The trial court found that Zuehl showed a lack of insight into the detrimental effects of removing M.K.W. from Swimm's care. The trial court found that Swimm's home was the ideal environment for M.K.W. and that M.K.W. did not have the same connection to friends and family in Oregon that she did in Washington. Finally, the trial court found that it was in M.K.W.'s best interests to be placed with Swimm. Based on these findings, the trial court found that placement with Zuehl would result in detriment to M.K.W.

We conclude that the trial court erroneously relied on the constitutionally insufficient "best interests of the child" standard, Shields, 157 Wn.2d at 143-44, and failed to place a heightened burden upon Swimm to prove by clear, cogent, and convincing evidence that placement with Zuehl would result in actual detriment to M.K.W.'s long-term growth and development.

Rather than finding that placement with *Zuehl* would result in actual detriment, the trial court's findings focus on the potential detriment to M.K.W. if she is removed from *Swimm's* care. But "[e]vidence that the nonparent can provide a more comfortable living environment is insufficient alone to establish a detrimental effect on the child if returned to the parent." C.D., 188 Wn. App. at

827 (citing In re Custody of Anderson, 77 Wn. App. 261, 264, 890 P.2d 525 (1995)). Other than the negative effects of removing M.K.W. from her friends and family in Washington, no witness testified what, specifically, about placement with Zuehl would result in actual detriment to M.K.W.'s growth and development. Rather, the trial court found that M.K.W.'s future with her mother was "uncertain." This falls short of the required standard.

The trial court's focus on M.K.W.'s best interests "is insufficient to offset the 'considerable deference'" that must be afforded to Zuehl. J.E., 189 Wn. App. at 190 (quoting B.M.H., 179 Wn.2d at 234).

### III

The facts of this case are unfortunate. Zuehl's history of substance abuse and crime have prevented her from caring for her daughter for years. In her absence, Swimm has provided M.K.W. with stability and a loving home. Nevertheless, in order to overcome Zuehl's constitutionally protected interest in raising her child, Swimm must show by clear, cogent, and convincing evidence that Zuehl is unfit or that placement with Zuehl would result in actual detriment to M.K.W. By relying on Zuehl's past conduct as a substitute for present fitness and by focusing on the best interests of the child to find actual detriment, the trial court applied the incorrect burden of proof.

We reverse the order granting nonparental custody to Swimm and remand for further proceedings consistent with this opinion.[4]

We concur:

---

- 14 -