COURT OF APPEALS, STATE OF WASHINGTON, DIVISION III

| | | |
|---|---|---|
| In re Custody of: | ) | |
| | ) | No. 32062-6-III |
| J.E. | ) | |
| | ) | |
| LUKE ANDN KELLY CULVER, | ) | ORDER AMENDING |
| | ) | COURT'S OPINION DATED |
| Respondents/ | ) | AUGUST 4, 2015 |
| Cross-Appellants, | ) | |
| v. | ) | |
| | ) | |
| AMY PAGE EATON and TRAVIS | ) | |
| EATON, | ) | |
| | ) | |
| Appellants. | ) | |
| | ) | |

IT IS HEREBY ORDERED on the court's own motion that the opinion filed on August 4, 2015 shall be amended as follows:

On page 14, second paragraph, line 10 that begins with "required to facilitate J.E.'s transition to the Culvers physical custody" is hereby amended to read "required to facilitate J.E.'s transition to the Eatons' physical custody."

DATED: 8/6/15
FOR THE COURT:

STEPHEN M. BROWN
ACTING CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Custody of: | ) | No. 32062-6-III |
| | ) | |
| J.E. | ) | |
| | ) | |
| LUKE AND KELLY CULVER, | ) | |
| | ) | PUBLISHED OPINION |
| Respondents/ | ) | |
| Cross-Appellants, | ) | |
| and | ) | |
| | ) | |
| AMY PAGE EATON and TRAVIS | ) | |
| EATON, | ) | |
| | ) | |
| Appellants. | ) | |

BROWN, J. — Travis and Amy Eaton appeal the trial court's nonparental custody decree granting 50/50 split custody of their son J.E. to Luke and Kelly Culver, J.E.'s uncle and aunt. The court found the Eatons fit parents. The Eatons mainly contend the court erred in concluding that dismissing the Culvers' petition would result in actual detriment to J.E's present and future growth and development. The Culvers cross-appeal, contending the court erred in failing to grant their motion to amend the pleadings to include a de facto parentage claim they made after resting their case and the Eatons had moved to dismiss. We hold the trial court erred in applying the actual detriment standard because substantial evidence does not establish specific facts

showing J.E. had any specific significant special need that could not be met by his parents. We find no error in the trial court's de facto parent rulings. Accordingly, we reverse and remand for proceedings consistent with this opinion.

FACTS

Beginning in 2003, two-year-old J.E. began primarily living with his uncle and aunt, the Culvers. His parents, the Eatons, were unable to care for J.E. and his older sister K.E. for a number of compelling reasons including a misdiagnosed mental health condition resulting in Ms. Eaton's debilitating suicide attempt, stress from K.E.'s severe and terminal epilepsy, and the Eatons' inability to care for their children under the circumstances. After a family "intervention," the Eatons reluctantly arranged to give the Culvers informal temporary placement of J.E. and K.E. mainly to assure K.E.'s care. Report of Proceedings (RP) at 1096. J.E. spent the next nine years residing primarily with the Culvers with the Eatons visiting. J.E. knew the Eatons were his parents and called them mom and dad. After some time, J.E. also began calling the Culvers' mom and dad with the Eatons' approval. When the Culvers had children, J.E. referred to his cousins as his siblings. J.E. is close to his cousins, especially his younger male cousin. The Culvers exercised medical decision-making authority for K.E. and J.E. pursuant to a 2007 power of attorney and a 2009 guardianship created by the Eatons. The record shows the parties shared and consulted in most significant care and upbringing decision-making for J.E. and K.E. Sadly, K.E. died in 2010.

2

Meanwhile, Ms. Eaton's health stabilized, she became successfully employed, and the Eatons' marriage stabilized. In 2012, the changed situation motivated the Eatons to seek J.E.'s transition back into their home. The Culvers cooperated, but the Eatons believed the pace was too slow and the Culvers' assistance was inadequate. In summer 2012, the Eatons chose not to renew the guardianship and decided not to return J.E. to the Culvers. In response, the Culvers petitioned for nonparental custody and obtained an ex parte order for J.E's return.

In their petition, the Culvers alleged for adequate cause: "The child has not been in the physical custody of either parent since 2003. Neither parent is a suitable custodian for the child because: The mother and father have had limited contact with the minor child for the past 9 years." Clerk's Papers (CP) at 4. For best interests, the Culvers alleged: "The change in custodians and home would be extremely detrimental to the child." CP at 4. The Eatons received physical custody after termination of the ex parte order, and the Culvers received visitation. The placements were generally reversed after the adequate cause hearing. The court decided the Eatons were fit parents. Even so, the court ordered J.E.'s slow transition into the Eatons' physical custody and counseling to assist J.E. with the transition. J.E. showed some negative behaviors when he returned to the Culvers' physical custody. The Eatons did not request reconsideration, superior court revision, or discretionary review. Instead, the Eatons began working to accomplish the court's transition plan. The court throughout unsuccessfully urged settlement.

3

No. 32062-6-III
*In re Custody of J.E.*

The court appointed counselor Doug Loree to facilitate visitation schedules and transition J.E. from the Culvers' home to the Eatons' home. Mr. Loree wanted to "empower" J.E. with significant input on the visitation schedule. RP at 40. Mr. Loree generally adopted J.E.'s wishes as his trial recommendation. Apparently early on, J.E. would not choose between the parties and suggested an equal time arrangement. Mr. Loree related cutting off all contact with the Culvers would be difficult for J.E. The court appointed a guardian ad litem (GAL) to assist J.E.'s transition into the Eatons' physical custody. The GAL answered "yes" when asked if she could accomplish the goal of transitioning J.E. from the Culvers' home to the Eatons' home if given additional time and more involvement. RP at 274. Asked at trial if the court denied the Culvers' petition whether "actual detriment" would result by the loss of the Culvers' family unit, the GAL responded, "Yes." RP at 274. But the GAL agreed no actual detriment would result if the parties could come to an equal time agreement. The GAL, like Mr. Loree believed it was in J.E.'s best interests to reside half in each home. Neither Mr. Loree, nor the GAL specified what actual detriment to J.E.'s growth and development would occur by having parental custody with the Eatons.

The court ruled the Culvers' unpleaded de facto parentage claim came too late because it was first mentioned after the Culvers rested their case and after the Eatons had moved to dismiss. Nevertheless, the court concluded the Culvers had "standing" to bring this nonparent custody case partly because J.E. had been in their "physical custody" but rejected de facto parentage as a basis for standing. RP at 45, 50. The

4

court ruled the Eatons were fit parents but decided J.E. would suffer actual detriment to his long term growth and development if the Eatons received full custody and ordered J.E. to reside equally with the Eatons and the Culvers. The Eatons appealed. The Culvers cross-appealed the trial court's de facto parentage rulings.

## ANALYSIS

### A. Nonparental Custody

The issue is whether the trial court erred in granting the Culvers' nonparent custody petition and decreeing evenly split custody with the Eatons. The Eatons mainly contend substantial evidence does not support the trial court's conclusion that actual detriment would result to J.E.'s future growth and development by maintaining custody with them. The Eatons challenge certain findings and the adequate cause decision.

Given "the trial court's unique opportunity to personally observe the parties," a trial court's custody disposition is not disturbed on appeal absent a manifest abuse of discretion. In re Custody of Stell, 56 Wn. App. 356, 366, 783 P.2d 615 (1989). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. West v. Dep't of Licensing, 182 Wn. App. 500, 516, 331 P.3d 72 (2014). "A trial court's decision is manifestly unreasonable" if it (1) "is outside the range of acceptable choices, given the facts and the applicable legal standard"; (2) "is based on untenable grounds if the factual findings are unsupported by the record"; or (3) "is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Id. at 516-17. While we can affirm

5

on any basis supported by the record, we will not review a trial court's credibility determinations or reweigh the evidence. *Id.* at 517; *In re Welfare of C.B.*, 134 Wn. App. 942, 953, 143 P.3d 846 (2006).

We will uphold a trial court's findings of fact if they are supported by substantial evidence. *In re Custody of Shields*, 120 Wn. App. 108, 120, 84 P.3d 905 (2004), *overruled on other grounds by* 157 Wn.2d 126, 136 P.3d 117 (2006). "Evidence is substantial if it exists in a sufficient quantum to persuade a fair-minded person of the truth of the declared premise." *Burrill v. Burrill*, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). A trial court's conclusions of law are reviewed de novo. *In re Custody of A.F.J.*, 179 Wn.2d 179, 184, 314 P.3d 373 (2013).

Chapter 26.10 RCW allows third parties to petition for child custody. "Such an award confers on the nonparental custodian the legal power to 'determine the child's upbringing,' to the exclusion of the natural parent." *In re Custody of C.C.M.*, 149 Wn. App. 184, 204, 202 P.3d 971 (2009) (quoting RCW 26.10.170). But

> [a] nonparent custody order confers only a temporary and uncertain right to custody of the child for the present time, because the child has no suitable legal parent. When and if a legal parent becomes fit to care for the child, the nonparent has no right to continue a relationship with the child.

*A.F.J.*, 179 Wn.2d at 186 (quoting *In re Parentage of J.A.B.*, 146 Wn. App. 417, 426, 191 P.3d 71 (2008)).

Because of parents' fundamental right to make decisions regarding the care, custody, and control of their children, we afford parents "considerable deference" when

balancing the parents' rights against both the interests of third parties and children's rights. *In re Custody of B.M.H.*, 179 Wn.2d 224, 234, 315 P.3d 470 (2013). Thus, in custody disputes between parents and nonparents, before a nonparent can be awarded custody, the nonparent must establish either the parent is unfit or custody with the parent would result in "actual detriment to the child's growth and development." *Id.* at 234 (quoting *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)). Because the Eatons' fitness is unchallenged, our sole focus is actual detriment.

Before a court can hear a nonparental custody petition, the court must make a threshold determination establishing adequate cause. RCW 26.10.032. To establish adequate cause to proceed with a nonparental custody action, the petitioner must (1) show the child is not in the physical custody of a parent or the parents are unsuitable custodians and (2) allege specific facts that, if proven true, establish the parent is unfit or the child would suffer actual detriment if placed with the parent. *Id.*; *E.A.T.W.*, 168 Wn.2d at 338. If the trial court determines the petitioner established adequate cause, the respondent must "show cause why the requested order should not be granted." *B.M.H.*, 179 Wn.2d at 236 (citing RCW 26.10.032(2)). While the Washington Supreme Court has not stated what standard of review applies for an adequate cause determination under chapter 26.10 RCW, it has alluded abuse of discretion ought to apply.[1] *Id.* at 239 n.1.

---

[1] In related areas of law, abuse of discretion is applied when reviewing adequate cause determinations. *See, e.g., In re Parentage of Jannot*, 149 Wn.2d 123, 128, 65 P.3d 664 (2003). The Eatons urge us to adopt the de novo standard of review because of the nature of their argument. The Eatons believe the Culvers' petition was

"Whether placement with a parent will result in actual detriment to a child's growth and development is a highly fact-specific inquiry." *Id.* at 236. As such, determining exactly "what might [constitute actual detriment to] outweigh parental rights must be determined on a case-by-case basis." *In re Marriage of Allen*, 28 Wn. App. 637, 649, 626 P.2d 16 (1981). When properly applied, the nonparent will meet this heightened standard solely in "extraordinary circumstances." *B.M.H.*, 179 Wn.2d at 236 (the actual detriment standard was met in the following circumstances showing unmet significant special needs: (1) "when a deaf child needed a caregiver who could effectively communicate with the child and the father was unable to do so," (2) "when a suicidal child required extensive therapy and stability at a level the parents could not provide," and (3) "when a child who had been physically and sexually abused required extensive therapy and stability at a level the parent could not provide").

The actual detriment standard does not focus on the best interests of the child: "[f]acts that merely support a finding that nonparental custody is in the 'best interests of the child' are insufficient to establish adequate cause." *Id.* at 237. For example, "[a] nonparent's capacity to provide a superior home environment to that which a parent can offer is not enough to" establish actual detriment. *C.C.M.*, 149 Wn. App. at 204. Similarly, a nonparent cannot obtain custody of a child merely because the trial court finds the nonparent would be a better parent. *E.A.T.W.*, 168 Wn.2d at 346-47. Moreover, actual detriment is not shown because a parent may interfere with the

---

inadequate as a matter of law and the court determined adequate cause existed based on an erroneous view of the law. The result would be the same using either standard.

relationship between the nonparent and the child. *B.M.H.*, 179 Wn.2d at 239 (stating while "the importance of preserving fundamental psychological relationships and family units" has been used to uphold a nonparental custody decree, more extreme and unusual circumstances existed in those cases, such as a child whose significant special needs would not be met if the child were in the parent's custody).

First, regarding adequate cause, the Eatons contend the nonparental custody petition was deficient because it did not allege either the parents were unfit or J.E. would suffer actual detriment if the petition was not granted. But RCW 26.10.032 permits filing for adequate cause when the child is not in the physical custody of a parent and disjunctively provides that neither parent is a suitable custodian. The Culvers' petition alleges a "change in custodians and home would be extremely detrimental to the child." CP at 4. While this allegation was not under the section entitled "Adequate Cause," it was in the following section. Moreover, this allegation, included the "actual detriment" language. The Eatons thus had notice of the Culvers' position, and the Culvers' petition was not deficient. While the Eatons argue the supporting declarations were insufficient, they do include information showing the Eatons withheld J.E. from the Culvers without notice and told J.E. he would not return to the Culvers. When returned, J.E. reacted negatively by becoming clingy, having angry outbursts, and acting aggressively toward his cousins whom he had treated as siblings.

Although the court found the parents fit, it found adequate cause based on actual detriment. Recognizing the temporary nature of third-party custody, it ordered services

9

No. 32062-6-III
*In re Custody of J.E.*

to facilitate its plan to transition J.E. to the Eatons' physical custody. The court shaped a considered response to support J.E.'s interests while deferring to the natural parents' fundamental custody rights. The Eatons chose not to object and did not seek reconsideration, revision, or discretionary review. They accepted and participated in the transition plan until they became dissatisfied with the evolving recommendations. In this sense, the Eatons withheld their adequate cause objections in order to contest actual detriment at trial. We discuss their actual detriment concerns below.

Second, we turn to the Eatons' challenges to the findings. Initially, we address findings relating to standing in Paragraph 2.6. Under the actual detriment heading, it partly states the Culvers "alleged it would be actually and substantially detrimental to [J.E.'s] longer term growth and development if he was placed with the [Eatons], given the history and extraordinary circumstances of this case." CP at 45. The Culvers did *allege* actual detriment. After finding J.E. became part of the Culvers' family with the Eatons' consent, the court made the finding critical to this appeal in a single conclusory sentence: "Severance of that arrangement would be actually detrimental to [J.E.'s] long term growth and development." This "finding" we analyze below in our discussion of the court's conclusion to the same effect. Lacking are facts about J.E. specifying any significant special need he had that could not be met by the Eatons. We do not discuss findings regarding parent unsuitability in Paragraph 2.6 because the trial court, like the adequate cause court, found the Eatons fit parents.

10

Turning to the Paragraph 2.7 findings relating to "Best Interest of the Child," we emphasize again the relevant standard concerns actual detriment, not best interests. Thus, our need to examine best interest findings is limited because the court's emphasis on J.E.'s best interests is misplaced. Contrasting the single-sentence conclusory finding concerning actual detriment to secure standing discussed above, the best interest findings cover five pages. The challenged findings mostly relating to the rejected de facto parenting claim are discussed separately below.

We disagree with certain findings involving Mr. Loree. Finding of fact 19 states "[J.E.] made it clear to Mr. Loree he wanted assurances (guarantees) he would not be taken out of the Culvers' home more than half the time. It would be actually detrimental to his long-term growth and development if he did not have this assurance." CP at 47. While J.E. once preferred a 50/50 split, this preference was withdrawn by the time of trial. J.E. limited his request to "regular ongoing contact" with the Culvers. RP at 46. Mr. Loree testified J.E. would have difficulty cutting all ties to the Culvers, but the record shows a close extended family with the Culvers living close by the Eatons and a long, consistent, albeit at times imperfect, history of mutual support for J.E. For example, when the Eatons were "almost forced" to give J.E. and K.E. to the Culvers, the court remarked in its ruling, "That was an act of love, pure and simple." RP at 1353. And when caring for K.E., the Eatons created a power of attorney and a guardianship for the Culvers. Finding of fact 27 relates to the GAL's opinion J.E. would suffer actual detriment if he did not spend at least half the time with the Culvers. This response was

11

based on deciding that day at trial. But the GAL testified, given additional time and involvement, she could successfully accomplish transitioning J.E. into the Eatons' home.

Third, the Eatons contend the trial court's actual detriment conclusion is erroneous because it improperly applied a best interest standard instead of properly applying the actual detriment standard. We agree. The court partly concluded "[i]t is in the best interests of the child to reside equally with the Culvers and the Eatons." CP at 50. The court further concluded "this decision is in [J.E.'s] best interests, which is a primary consideration in all cases involving children," and the Culvers did "prove that [J.E.'s] placement with the Eatons would result in actual detriment to his present and future growth and development." CP at 51.

The court found the Eatons to be fit parents. The Culvers did not disagree but argued J.E. would suffer actual detriment if their petition was dismissed outright and their relationship with J.E. was severed completely. The record does not support a complete severance of J.E.'s relationship with the Culvers. The Culvers' evidence suggested J.E. would suffer actual detriment because the Eatons have not handled stressful situations with J.E., the Eatons were not looking out for J.E.'s best interests, and J.E. acted negatively after the Eatons asserted their parental rights. While courts may "speculate about future possibilities in making determinations about domestic relations," courts are reluctant to interfere with parents' rights absent fairly extraordinary

12

facts. *B.M.H.*, 179 Wn.2d at 238-39. The necessary extraordinary facts are not presented here.

Mr. Loree wanted to "empower" J.E. by giving him significant input on a visitation schedule, but understandably J.E. would not choose between the parties. J.E. did want significant contact with the Culvers, and the Eatons have not cut off all contact with the Culvers. Moreover, the GAL believed if given additional time and involvement she could accomplish the goal of J.E.'s transition to the Eatons. While the GAL agreed no actual detriment would result if the parties shared equal time with J.E, the facts do not identify or specify any significant special need, or even any need of J.E., that could not be met by the Eatons. Therefore, the facts here do not rise to the level of those discussed in *B.M.H.*

The facts, at best, show splitting custody between the Eatons and the Culvers was in J.E.'s best interests. But actual detriment is the standard we must apply. As seen in *B.M.H.*, the Culvers' concern that the Eatons might interfere in their relationship with J.E. is insufficient to show actual detriment. While Washington courts have recognized "the importance of preserving fundamental psychological relationships and family units," the parents' rights yield to state interests solely when "parental actions or decisions seriously conflict with the physical or mental health of the child." *Id.* at 239 (quotation omitted). The law presumes fit parents will act in their child's best interests. *Id.* at 235. The court misapplied this presumption in speculating that the Eatons would cut off contact with the Culvers.

While the court made extensive findings supporting best interests, those findings are alone insufficient to support a conclusion of actual detriment to J.E.'s growth and development. *B.M.H*, 179 Wn.2d at 237. This record nowhere shows, and the court did not find, the necessary extraordinary facts to support the heightened standard of actual detriment. *Id.* at 236. Under *B.M.H*, the record must show J.E. has significant special needs that would not or could not be met if he were in the Eatons' physical custody. *Id.* As compared to the cases discussed in *B.M.H*, J.E. is not deaf and does not need the Culvers to communicate nor does he require extensive therapy and stability at levels the Eatons could not provide.

The record is devoid of any identified specific significant special need supporting a legal conclusion of actual detriment to J.E.'s present and future growth and development. The record does not show the Eatons cannot provide for J.E.'s health, safety, emotional, or other fundamental needs. Given this record, we cannot say J.E.'s needs cannot be met by the Eatons with full parental custody. The record supports the trial court's effort for J.E.'s slow and deliberate transition to the Eatons' physical custody, with leave to the trial court to exercise its discretion to provide orders that may include visitation for the Culvers to a degree designed to provide regular ongoing contact for J.E., supportive transition counseling, and such other orders as may be required to facilitate J.E.'s transition to the Culvers physical custody. Considering J.E.'s increasing age, the court's decree may well extend until J.E.'s majority.

14

In sum, this record does not show the legally required extraordinary facts to establish actual detriment. J.E. has not shown signs of serious diagnosed emotional instability or physical disability. *See In re Custody of R.R.B.*, 108 Wn. App. 602, 31 P.3d 1212 (2001) (actual detriment standard met when suicidal child required extensive therapy and stability that parents could not provide); *Stell*, 56 Wn. App. 356 (actual detriment standard met when physically and sexually abused child required extensive therapy and stability that parents could not provide); *Allen*, 28 Wn. App. at 640-41 (actual detriment standard met when father was unable to communicate with deaf child). The trial court's focus on J.E.'s best interests is insufficient to offset the "considerable deference" we must afford the Eatons. *B.M.H*, 179 Wn.2d at 234. Specific facts showing specific significant special needs that could not be met by the parents are required to establish actual detriment; this is "a highly fact-specific inquiry." *Id.* at 236. Given our analysis, we hold the trial court erred in concluding the Culvers met their burden to show actual detriment.

## B. De Facto Parents

The issue is whether the trial court erred when it denied the Culvers' motion to amend the pleadings to include the issue of de facto parentage. The Culvers contend they had standing to raise this issue, and the Eatons consented and suffered no prejudice.[2]

---

[2] The Eatons object to findings related to de facto parentage as it was not pleaded nor tried consensually. The findings are harmless considering we find no error in the court's refusal to amend the pleadings.

15

"De facto parentage is a flexible equitable remedy that complements legislative enactments where parent-child relationships arise in ways that are not contemplated in the statutory scheme." *B.M.H.*, 179 Wn.2d at 240. De facto parents "stand[ ] in legal parity with an otherwise legal parent." *In re the Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005). To establish de facto parentage, a petitioner must show "(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature." *Id.*

We will not overturn a trial court's refusal to grant a motion to amend pleadings except for manifest abuse of discretion. *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 27, 974 P.2d 847 (1999). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Green v. Hooper*, 149 Wn. App. 627, 636, 205 P.3d 134 (2009). Issues not raised in the pleadings may be tried by express or implied consent. *Dewey*, 95 Wn. App. at 26; CR 15(b). When analyzing whether an issue was impliedly tried, we consider the entire record, "including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue admitted at the trial, and the legal and factual support for the trial court's conclusions regarding the issue." *Dewey*, 95 Wn. App. at 26.

16

No. 32062-6-III
*In re Custody of J.E.*

CR 15(b) amendments cannot unfairly prejudice a party's ability to present a defense. *Green*, 149 Wn. App. at 638.

The Culvers did not seriously mention de facto parentage until after they rested their case-in-chief; in all prior proceedings, the Culvers stated they were not going to pursue the issue of de facto parentage. Prejudice would result if the Culvers were allowed such a late amendment because different legal rights attach to a determination of de facto parentage than a grant of nonparental custody. Thus, different discovery would likely be required. Given all, the court did not err denying the motion to amend.

### C. Attorney Fees

Both parties request attorney fees under RCW 26.10.080, which allows this court, in its discretion, to order a party to pay for the cost to the other party of maintaining the appeal, including attorney fees. We must balance the needs of the party requesting fees against the other parties' ability to pay. *In re Brown*, 153 Wn.2d 646, 656, 105 P.3d 991 (2005). No attorney fees were requested below. Considering all, we award no fees here.

Reversed.

_____
Brown, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

17