**FILED**
**OCTOBER 17, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In the Matter of the Custody of | No. 33013-3-III |
| H.A.R.,[†] | |
| Child. | |
| | |
| PAMELA and THEODORE SUCHLAND, | |
| Appellants, | UNPUBLISHED OPINION |
| and | |
| AMANDA MARIE SUCHLAND and JEREMY JOHN REYNOLDS, | |
| Respondents. | |

---

[†] To protect the privacy interests of H.A.R., a minor, we use her initials throughout this opinion. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber= 2012_001&div=III.

PENNELL, J. — Theodore and Pamela Suchland appeal the dismissal of the de facto parentage action and nonparental custody petition they filed to gain custody of their granddaughter, H.A.R. We affirm.

## FACTS

The facts are known to the parties and need not be recounted in detail. Jeremy Reynolds and Amanda Suchland are H.A.R.'s biological parents. They have never been married. When H.A.R. was approximately two and one-half years old, Mr. Reynolds and Ms. Suchland separated and H.A.R. began living with her mother and her maternal grandparents. Shortly after the separation, Mr. Reynolds brought a parentage action seeking a residential schedule for H.A.R. After some legal disputes, Mr. Reynolds began visitation in 2013.

Throughout 2013, Mr. Reynolds exercised most of his visitation rights. Not long after visitation commenced, H.A.R.'s mother abandoned her. This left H.A.R. in the exclusive care of her grandparents. Mr. Reynolds was not made aware of this development.

During this same timeframe, the Suchlands grew concerned that H.A.R. had been physically abused. Child Protective Services became involved and the Suchlands filed a dependency petition in January 2014, based on the mother's abandonment and Mr.

2

Reynolds's alleged abuse. Mr. Reynolds denied any abuse and the dependency action was ultimately dismissed.

Not having found relief through the dependency, in August 2014 the Suchlands filed a nonparental custody petition for H.A.R., later amending it to allege de facto parentage. The court found adequate cause to proceed to trial on the nonparental custody petition but not on the de facto parentage claim. At trial, the court heard from several witnesses. The testimony regarding whether H.A.R. had been physically abused was mixed. The Suchlands presented testimony suggesting H.A.R. had been abused. Mr. Reynolds testified and denied any abuse. He also called witnesses to support his claims.

At the end of trial, the court determined the Suchlands had not proved by a preponderance of the evidence that Mr. Reynolds was an unfit parent or that he had abused H.A.R. The court found several of the Suchlands' witnesses not credible. In addition, the court did not consider photographs of H.A.R.'s bruising indicative of abuse. Although the court found H.A.R. was happy with her grandparents and thrived in their home, the court explained that the "best interest of the child" standard did not apply to a nonparental custody proceeding. Clerk's Papers at 541, 543. The court then dismissed the nonparental custody petition. The Suchlands appeal.

3

No. 33013-3-III
*In re Custody of H.A.R.*

ANALYSIS

*Adequate cause for de facto parentage*

The Suchlands contend the trial court should not have dismissed their de facto parentage action because they presented evidence Mr. Reynolds fostered the Suchlands' parent-like relationship with H.A.R. The Suchlands point to: (1) Mr. Reynolds's delay in obtaining visitation, and (2) his nonpayment of child support. This court reviews a ruling concerning the placement of a child for abuse of discretion. *In re Parentage of J.A.B.*, 146 Wn. App. 417, 422, 191 P.3d 71 (2008).

"[A] *de facto* parent stands in legal parity with an otherwise legal parent." *In re Parentage of L.B.*, 155 Wn.2d 679, 708, 122 P.3d 161 (2005). A person petitioning for de facto parentage must show the following:

"(1) the natural or legal parent consented to and fostered the parent-like relationship, (2) the petitioner and the child lived together in the same household, (3) the petitioner assumed obligations of parenthood without expectation of financial compensation, and (4) the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship, parental in nature."

*J.A.B.*, 146 Wn. App. at 427 (quoting *L.B.*, 155 Wn.2d at 708).

The trial court properly held that the Suchlands failed to establish the first element of de facto parentage. While Mr. Reynolds could have done more to be with H.A.R. and

4

provide financial support, [1] he never abandoned his daughter. Nor is there any evidence

Mr. Reynolds consented to the Suchlands taking over the role of H.A.R.'s parents. To the

contrary, it was the efforts of Mr. Reynolds to exercise his rights as H.A.R.'s father that

placed him in conflict with the Suchlands. The evidence presented by the Suchlands did

not meet the rigorous standards required for establishing de facto parentage. *Cf. In re

Parentage of J.B.R.*, 184 Wn. App. 203, 205-07, 214, 336 P.3d 648 (2014) (father's

failure to seek relationship with daughter for more than 10 years evidenced consent to

de facto parentage).

*Nonparental custody petition*

Chapter 26.10 RCW permits a third party nonparent to petition a court for custody

of a child. Because such a request necessarily implicates the parent's fundamental right

to raise his or her children without state interference, this court affords a parent

considerable deference when balancing the parent's rights against both the interests of

third parties and children's rights. *In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21

(1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49

(2000); *In re Custody of J.E.*, 189 Wn. App. 175, 183-84, 356 P.3d 233 (2015). A court

---

[1] While Mr. Reynolds failed to pay child support, he did provide insurance coverage for H.A.R. The fact that the Suchlands did not want to use Mr. Reynolds's insurance cannot be said to be his fault.

will only grant the third party's petition when the nonparent establishes by clear and convincing evidence that "either the parent is unfit or custody with the parent would result in 'actual detriment to the child's growth and development.'" *J.E.*, 189 Wn. App. at 184 (internal quotation marks omitted) (quoting *In re Custody of B.M.H.*, 179 Wn.2d 224, 235, 315 P.3d 470 (2013)); *In re Custody of C.C.M.*, 149 Wn. App. 184, 205-06, 202 P.3d 971 (2009).

The Suchlands correctly point out that the trial court used the wrong standard of proof in assessing their nonparental custody petition. Instead of employing a preponderance standard, the court should have utilized the more stringent clear and convincing standard. But this error does not benefit the Suchlands. By finding the Suchlands failed to prove by a preponderance of the evidence that Mr. Reynolds was an unfit parent or dangerous to H.A.R., the trial court necessarily also found the Suchlands had failed to satisfy their burden of proof by clear and convincing evidence. Although the Suchlands did present some evidence of abuse and parental unfitness at trial, the evidence was not so overwhelming to compel a decision in their favor. The trial court's findings in favor of Mr. Reynolds have evidentiary support and therefore withstand scrutiny on appeal.

No. 33013-3-III
*In re Custody of H.A.R.*

CONCLUSION

The trial court's orders dismissing the de facto parentage action and nonparental

custody petition are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Korsmo, J.                              Siddoway, J.

7