IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Custody of C.W., Minor Child, | No. 79533-3-I (consolidated with 79600-3-I) |
| MARVIN J. WALTER and ROSEMARY S. WALTER, | DIVISION ONE |
| Appellants/Cross-Respondents, | |
| v. | UNPUBLISHED OPINION |
| ARLENE THIESSEN, | |
| Respondent/Cross-Appellant. | FILED: March 2, 2020 |

SMITH, J. — Arlene Thiessen appeals from an order awarding custody of C.W. to Marvin and Rosemary Walter.[1] She asserts the trial court abused its discretion in finding her currently unfit to parent C.W. based on her alcoholism and recent relapses with alcohol use. For the reasons that follow, we affirm.

FACTS

Arlene Thiessen is the mother of two children, seven-year-old E.B. and three-year-old C.W. Respondents Marvin and Rosemary Walter are the paternal grandfather and step-grandmother of C.W. C.W. and E.B. do not share the same biological father.

---

[1] On January 28, 2020, this court granted the parties' voluntary motion to dismiss the Walters' appeal, leaving only Thiessen's cross appeal for this court to address.

Thiessen acknowledges that she struggles with alcoholism and methamphetamine addiction. Prior to 2017, Child Protective Services (CPS) received several reports alleging drug and alcohol abuse and child neglect by Thiessen, all of which were determined to be unfounded. Thiessen nevertheless engaged in alcohol and drug treatment and mental health treatment services at the request of CPS pursuant to these referrals between July 2014 and October 2017.

In February 2017, when C.W. was two months old, his father Kipp Walter passed away unexpectedly. At that time, Thiessen and her children were living with Kipp on his boat at a marina in Tacoma. In April 2017, Thiessen and her children moved into an apartment near the Walters in Skagit County.

On October 16, 2017, Thiessen was arrested for driving under the influence (DUI) with both of her children in the car.[2] She subsequently agreed to place her children in CPS custody for 90 days while she entered into an intensive outpatient treatment program for drug and alcohol abuse. Although Thiessen wanted the siblings to remain together, CPS placed C.W. with the Walters and E.B. in foster care. Thiessen also voluntarily agreed to participate in additional services to address parental issues, to continue receiving treatment from her mental health counselor, and to attend AA meetings.

CPS determined that E.B. and C.W. could be returned to Thiessen after the 90-day voluntary placement agreement was complete. However, on

---

[2] Thiessen's DUI charge was dismissed in exchange for pleading guilty to a negligent driving charge.

December 8, 2017, the Walters filed a nonparent custody petition for C.W. On December 22, 2017, the court entered a temporary nonparent custody order awarding custody of C.W. to the Walters and allowing Thiessen supervised daytime visitation of three hours once per week. CPS returned E.B. to Thiessen's custody in December 2017. Were it not for the temporary nonparent custody order, CPS would have also returned C.W. to Thiessen's custody at the same time.

Between her DUI arrest in October 2017 and the trial in September 2018, Thiessen had four relapses of alcohol use. In December 2017, she took some sips of beer and then called her sponsor. In April 2018, she bought a small bottle of liquor, "took a couple swigs," then self-reported to CPS and her chemical dependency counselor. In June 2018, she drank "[what] could have been vodka" while E.B. was at a skating rink. She did not drink to intoxication, and she self-reported this relapse. In September 2018, a couple of weeks prior to trial, Thiessen consumed two one-ounce bottles of Fireball and a beer while E.B. was at school. Thiessen did not self-report this relapse. It was discovered when Thiessen's chemical dependency counselor, Joanna Farnsworth, spoke with Thiessen on the phone and thought she sounded "emotional." Farnsworth asked Thiessen to walk to her office immediately for an individual session. There, Farnsworth observed that Thiessen appeared to be intoxicated. Farnsworth then asked Thiessen whether she had been drinking, and Thiessen admitted she had. Farnsworth directed Thiessen to contact her sober support network and arranged

for her Parent-Child Assistance Program (PCAP) advocate to be present when E.B. returned from school.

The court-appointed guardian ad litem (GAL), Annalise Martucci, testified twice at the custody trial. Martucci testified that her pretrial report recommended that C.W. should continue to reside primarily with the Walters at least temporarily with increased visitation for Thiessen. Martucci agreed that "concerns with regard to parental unfitness persist to this day" and expressed "real concern about [Thiessen's] ability to safely supervise both boys at the same time at this point." She predicated her opinion on "the fact that [Thiessen] does not have an ongoing history of being clean," as well as Thiessen's lack of coping skills, her mental and physical health issues, and the stress of watching two children. Martucci also expressed concern about Thiessen's pattern of conflicting statements regarding her drug and alcohol use and her "history of receiving services and then falling back into very dangerous behavior." Martucci did not rule out the possibility that Thiessen would eventually be capable of parenting C.W. in her own home but did not believe she was there yet.

Farnsworth testified regarding Thiessen's September 2018 relapse. On cross-examination, Farnsworth acknowledged that Thiessen had failed to accurately report the last date she used methamphetamines. She also acknowledged that urinalysis had failed to catch any of Thiessen's relapses. Martucci subsequently returned and testified that Thiessen had failed to inform her that she had relapsed in June and September 2018. Martucci learned of

these relapses via Farnsworth's trial testimony. Based on that new information, Martucci testified she "would easily say that I believe [Thiessen] is unfit."

Thiessen's CPS caseworker Monica Glausen also testified twice at trial. Glausen initially testified that Thiessen was "doing well with services" and that she did not have any concerns about returning C.W. to Thiessen's care as long as she has a safety plan in place. Glausen stated that she was aware Thiessen had relapsed in December 2017 and "maybe another time." Following Farnsworth's testimony regarding Thiessen's recent relapses, Glausen returned and testified that relapses are an expected "part of recovery" and that this new information did not change her opinion that E.B. and C.W. are safe in Thiessen's care. She further testified that she did not believe Thiessen's relapse placed E.B. at risk because there was a safety plan in place.

After a five-day bench trial, the court awarded custody of C.W. to the Walters. The court entered the following pertinent findings:

> The child's mother, Respondent Arlene Thiessen, is currently unfit due to alcoholism as shown by a relapse in her recovery program and use of alcohol shortly before trial. Although Petitioners contend Respondent is unfit for numerous reasons, the only basis Respondent is currently unfit is because of her alcoholism and recent relapses with alcohol. This current unfitness may be temporary and the court believes Respondent should have the opportunity and the motivation to see if she can overcome this singular unfitness and come back to this court and show that circumstances have changed, that she is no longer unfit due to alcoholism, and therefore have custody of [C.W.] returned to her.
>
> At time of trial Arlene was involved in intensive outpatient services to address drug and alcohol addiction. The court is concerned that Respondent is not fully invested in recovery due to several relapses of alcohol use every 3-4 months, including one right before trial. Based on this, the one and only issue that the court is focusing its concern on is Respondent's alcohol intake. The court finds that the

5

most recent relapse so close to trial renders Respondent currently unfit as a parent, but that this unfitness can be overcome. So the court is maintaining jurisdiction over this case and granting custody of [C.W.] to Petitioners, subject to further review, and putting Respondent on court supervision to monitor her continued progress. The court recommends Respondent to get into inpatient alcohol treatment for at least 60 days.

The court also reserved jurisdiction to itself to modify the nonparental custody decree without a finding of adequate cause for a major modification as required by RCW 26.09.260 if at some point in the future, the court finds that Thiessen is no longer unfit to parent C.W. The court ordered a six-month review hearing and a one-year review hearing for the purpose of monitoring Thiessen's progress in overcoming her alcohol addiction and determining whether C.W. could be returned to Thiessen's custody. Following trial, Thiessen continued to participate in drug and alcohol treatment with random urinalysis tests, all of which were negative as of July 2019.

The Walters appealed from the trial court's indefinite reservation of jurisdiction, and Thiessen cross appealed the custody determination. Before the Walters submitted their opening brief, this court issued an opinion that obviated the trial court's rationale for reserving jurisdiction. See In re Custody of S.M., 9 Wn. App. 2d 325, 444 P.3d 637 (2019). On October 21, 2019, the court withdrew its jurisdiction over matters of visitation and ordered that Thiessen's visits with C.W. be conditionally unsupervised. The parties subsequently stipulated to the voluntary dismissal of the Walters' appeal, leaving only Thiessen's cross appeal for this court to address.

ANALYSIS

Custody Determination

Thiessen argues that the trial court erred in granting the Walters' nonparent custody petition. She contends that substantial evidence does not support the trial court's finding that she was currently unfit due to alcoholism. The nonparental party bears the substantial burden of showing the parent's current unfitness or actual detriment to the child. In re Custody of Shields, 157 Wn.2d 126, 142, 136 P.3d 117 (2006). "Given 'the trial court's unique opportunity to personally observe the parties,' a trial court's custody disposition is not disturbed on appeal absent a manifest abuse of discretion." In re Custody of J.E., 189 Wn. App. 175, 182, 356 P.3d 233 (2015) (quoting In re Custody of Stell, 56 Wn. App. 356, 366, 783 P.2d 615 (1989)). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds." In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). In resolving third-party custody petitions, "the petitioning party must prove his or her case by clear and convincing evidence." In re Custody of A.L.D., 191 Wn. App. 474, 501, 363 P.3d 604 (2015). We review de novo whether the findings of fact support the conclusions of law. In re Custody of A.F.J., 179 Wn.2d 179, 184, 314 P.3d 373 (2013).

A nonparent may petition for custody of a child if the child is not in the physical custody of a parent or if the petitioner alleges that neither parent is a suitable custodian. RCW 26.10.030(1). "Because of parents' fundamental right to make decisions regarding the care, custody, and control of their children, we

7

afford parents 'considerable deference' when balancing the parents' rights against both the interests of third parties and children's rights." J.E., 189 Wn. App. at 183 (quoting In re Custody of B.M.H., 179 Wn.2d 224, 234, 315 P.3d 470 (2013)).

In custody disputes between a parent and nonparent, the nonparent petitioner must establish either that the parent is unfit or that placing the child with the parent would result in "actual detriment to the child's growth and development.'" In re the Custody of L.M.S., 187 Wn.2d 567, 576, 387 P.3d 707 (2017) (quoting In re Custody of E.A.T.W., 168 Wn.2d 335, 338, 227 P.3d 1284 (2010)). "A parent is unfit if he or she cannot meet a child's basic needs." L.M.S., 187 Wn.2d at 576. "Whether placement with a parent will result in actual detriment to a child's growth and development is a highly fact-specific inquiry, and '[p]recisely what might [constitute actual detriment to] outweigh parental rights must be determined on a case-by-case basis.'" B.M.H., 179 Wn.2d at 236 (alterations in original) (internal quotation marks omitted) (quoting Shields, 157 Wn.2d at 143). The "test for fitness of custody is the present condition of the mother and not any future or past conduct." A.L.D., 191 Wn. App. at 506. "A decree awarding custody to a nonparent under chapter 26.10 RCW is never permanent because custody is always subject to modification under RCW 26.09.260(1)." In re Custody of Z.C., 191 Wn. App. 674, 693, 366 P.3d 439 (2015).

Thiessen asserts that the trial court erred in finding her unfit based solely on her September 2018 relapse shortly before trial. However, in an oral ruling

8

expressly incorporated into the written findings, the court expressed doubt regarding Thiessen's commitment to sobriety in light of her multiple relapses.

> But I am extremely concerned about the level of what you are calling relapse. My concern is you're not there yet. You're not really fully invested in recovery when we're seeing these relapses every 3 and 4 months, and then we see them right before trial.

The court also expressed concern about Thiessen's failure to disclose her recent relapses to the GAL and the court. It is apparent that the court did not view the September 2018 relapse as an isolated event, but as the tipping point in an ongoing pattern of behavior.

Thiessen also argues that the evidence regarding her September 2018 relapse does not support the finding of current unfitness. She contends there was no definitive evidence that she was intoxicated as a result of this relapse and that there is no evidence E.B. would have been unsupervised when he got home from school that day. We disagree. Farnsworth testified that Thiessen's demeanor over the phone prompted her to summon Thiessen to her office and ask whether she had been drinking. Farnsworth also testified that Thiessen appeared intoxicated when they met at around 1:30 p.m. and that she felt it was necessary for Thiessen's PCAP advocate to be present when E.B. returned from school. Farnsworth's testimony also established that Thiessen admitted she had been drinking only after she was confronted. Based on this evidence, the court stated in its oral ruling that were it not for Farnsworth's intervention, E.B. would have come home to a "drunk mother." It is reasonable to infer that Thiessen's

9

intoxication likely rendered her unable to supervise E.B. when he came home from his first day of school.

Thiessen relies on testimony from Glauser and other service providers who supported returning C.W. to her custody. Thiessen contends that the court's finding of unfitness was a clear abuse of discretion because Glauser's testimony establishes that the September 2018 relapse did not place E.B. in danger or change CPS's opinion that custody of C.W. should be returned to her. She also argues that it is anomalous to grant a nonparent custody order as to C.W. where CPS has no current concerns regarding her ability to parent E.B.

However, the court firmly rejected Glauser's opinion that Thiessen's four relapses were merely "part of recovery," stating,

> Ms. Glauser to come in here and testify and ignore a relapse that happened a week and a half before is a disservice to you and to this Court. While I don't know, it seems to me your attorney and certainly Mr. Dubose seemed extremely surprised by that information. That's not forthcoming, and honest, and putting all your cards on the table so that we can help you. That is continuing to hide until you've gotten caught.

In contrast, the GAL "easily" opined that Thiessen was currently unfit based on evidence establishing her pattern of relapses and her failure to report them, including the September 2018 relapse shortly before trial. She testified:

> Part of my previous testimony that I believed that I could not say with certainty that she was unfit was based on the fact that I understood her to be in complete compliance with everything that those professionals were asking her to do in which case she would have demonstrated several months of complete sobriety and potentially a break in the pattern that we've seen for many years previous to that.
>
> . . . .
>
> . . . [T]he main change in my testimony is that there was a relapse. I also think that it was problematic if she did not disclose it.

10

. . . .

. . . She did not disclose it to me.

On this basis, she reasonably concluded that Thiessen had no "ongoing history of being clean." The trial court agreed with the GAL's opinion and rejected that of Glauser and CPS. We do not review a trial court's evidentiary weight and witness credibility determinations. In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002). Moreover, the trial judge is "not bound by GAL recommendations." In re Marriage of Magnuson, 141 Wn. App. 347, 350, 170 P.3d 65 (2007); In re Marriage of Swanson, 88 Wn. App. 128, 138, 944 P.2d 6 (1997).

Thiessen next asserts that the GAL applied an incorrect standard by basing her recommendation on the "best interest of the child" rather than the parental unfitness or detriment standard. But when asked about this at trial, the GAL testified that she focused on the best interest of the child in her report because she believed her role was to investigate and make fact-based recommendations, not to make legal conclusions regarding parental fitness or detriment. Moreover, the GAL's trial testimony made clear that she believed Thiessen was currently unfit based on her relapses and failure to disclose alcohol use. Ample evidence supports the GAL's opinion.

Thiessen further asserts that the GAL should not have changed her opinion as to Thiessen's fitness based solely on representations made to her about the September 2018 relapse from the Walters' attorney, rather than conducting her own investigation. But Thiessen does not assert that an

11

investigation would have revealed new information that would mitigate the impact of the September 2018 relapse. The GAL's report and trial testimony do not create a basis for reversal.

Thiessen also contends that the court's finding of unfitness was a clear abuse of discretion because she was not subject to an order prohibiting her from using alcohol. However, Thiessen cites no authority for the proposition that a parent with relapsing substance abuse problems cannot be found unfit absent such an order. This argument is not persuasive.

Next, Thiessen likens her case to several opinions in which the appellate court either reversed a nonparent custody order or affirmed its denial. None compel a different result. In Z.C., the court reversed an agreed nonparent custody decree because it did not establish parental unfitness or actual detriment. 191 Wn. App. at 695-96. But here, evidence in the record supported the trial court's finding that Thiessen was unfit. In A.L.D., the appellate court reversed the trial court's award of custody to the maternal grandmother and step-grandfather where the trial court did not apply the correct burden of proof, there was scant evidence of current unfitness, and no independent or expert testimony showed any detriment to the child. 191 Wn. App. at 505. Here, in contrast, the trial court applied the correct burden of proof, there was ample evidence that Thiessen continued to struggle with alcohol abuse, and actual detriment was not at issue. And in In re Custody of L.M.S., the court held that the father's alleged prior abandonment of his daughter was insufficient to make a threshold showing that custody with him would be an actual detriment to her growth and

development or that he was currently unfit. 187 Wn.2d 567, 581, 387 P.3d 707 (2017). But here, the trial court's findings were expressly based on current unfitness, not actual detriment.

Thiessen next challenges the trial court's statement in its oral ruling that both CPS and Thiessen's drug and alcohol treatment provider did her "a disservice" and made things "way too easy" by letting her know ahead of time when she might be subjected to urinalysis. She contends that the trial court made this finding based on its own personal experience rather than any evidence in the record. But Glauser admitted that she requested only one urinalysis shortly after opening the case, that she did not know whether anyone else at CPS had requested any other drug testing or urinalysis tests, and that she scheduled or announced all home visits in advance. Farnsworth also acknowledged discrepancies in Thiessen's self-reported use of drugs and alcohol, and admitted that urinalysis did not detect any of Thiessen's relapses. And the GAL expressed concern about Thiessen's pattern of conflicting statements regarding her drug and alcohol use. On this basis, it is reasonable to infer that Thiessen's service providers unintentionally made it easier for her to hide any relapses.

Thiessen also argues that the trial court erred in implicitly finding that placing C.W. in her care would cause actual detriment. However, at a hearing on September 9, 2019, the court clarified that the nonparent custody order was based solely on a finding of unfitness. This oral ruling was expressly

13

incorporated into the court's October 21, 2019, order on visitation and transfer to custody.

Attorney Fees

Thiessen requests attorney fees and costs on appeal pursuant to RAP 18.1 and RCW 26.10.080. RAP 18.1 authorizes us to award reasonable attorney fees and costs if applicable law grants the party the right to recover them. RCW 26.10.080 provides that "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs." In addressing an award of attorney fees and costs in the trial court, the statute provides that an award may be made "after considering the financial resources of all parties." Both parties submitted financial declarations to this court. After considering the parties' needs and ability to pay, we decline to award Thiessen attorney fees and costs on appeal.

Affirmed.

WE CONCUR: