## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Custody of: | No. 56930-2-II |
| R.C., | |
| A Minor Child, | |
| SHERYL CULVER, | UNPUBLISHED OPINION |
| Appellant, | |
| v. | |
| DEBBIE NOBLE, | |
| Respondent. | |

CHE, J.—Sheryl Culver appeals the trial court's denial of her petition for de facto parentage of her granddaughter, RC. She argues that the trial court erred by finding that she did not hold out RC as her own child and by finding that it was not in RC's best interests to continue the relationship as a de facto parent between RC and Culver. We disagree and affirm.

FACTS

Culver is the paternal grandmother of RC. After RC was born, RC and her parents lived with Culver. RC's mother, Debbie Noble, and RC's father, Jacob Culver, ended their relationship in October 2015. After her parents separated, RC alternated weeks with Noble and her father at Culver's home. RC's father passed away unexpectedly in December 2020. Before Jacob passed away, he and RC lived with Culver during Jacob's residential time.

Culver filed a petition to establish de facto parent status. In support of her petition, Culver described her relationship with RC over the years. Culver claimed that when RC lived with her, Culver provided for all of her financial and emotional needs without expectation of compensation. Culver explained that she cared for RC as if she was Culver's own child. "I helped [RC] with her schooling, I took her to doctors' appointments and with the everyday tasks involved in raising a child. If Jacob was busy, I stepped into the role of parent taking care of [RC] just as a parent cares for a child." Clerk's Papers (CP) at 8. Culver and Jacob obtained medical care for RC when RC was having vision troubles.

Culver's daughter-in-law submitted a declaration in support of Culver's petition. She described the close relationship RC had with Culver and that side of her family. She emphasized the close bond between RC and Culver:

> [S]he has gone above and beyond what any grandma would do in a normal role. [Culver] is a second mom to [RC]. [Culver] has cared for [RC] since she was born. Not only has she cared for [RC] like her own child, but she also cared for [Noble]'s children as her own as well. . . [Culver] is nothing but a nurturing, loving and supporting grandma/caregiver to her grandchildren. While she is fun and adventurous, she also plays the role that a parent should in regard to structure, safety, discipline, etc. She is not the "normal" grandma; going to spend the night and eat cookies all evening. [Culver] and [RC] have a strong bond like a healthy mother and daughter should.

CP at 18.

Noble opposed Culver's petition for de facto parent status. She acknowledged RC and Culver's close relationship, but described it as a grandparent-grandchild dynamic. She described the things Culver bought for RC as gifts, not necessities. Noble emphasized that Culver's role was primarily to help Jacob during his residential time with RC when he was physically unable to care for RC himself. Noble described a tense dynamic between herself and Culver, wherein

Culver disagreed with Noble's parenting style and frequently undermined her authority and decision making.

Following a trial, the trial court found six of the seven statutory factors for de facto parentage satisfied, but found that Culver did not hold out RC as her own child. In its oral ruling, the trial court stated that the statute requiring a de facto parent hold out a child as her own is ambiguous:

> Ultimately, I don't think this is what the statute was intended to be used for. I think the statute was intended to be primarily used for the stepparent situation. And I think expanding it out to grandparents, godparents, step grandparents is—it can be done, certainly, under certain circumstances. I don't think the statute should be read as broadly as allowing every landlord to become a de facto parent, but the elements wouldn't support that either because a typical landlord doesn't undertake the other aspects of de facto parentage. There has to be something more than being a landlord, and there has to be something more than being a grandparent.
>
> And here, what we see is a grandparent who is a very doting, loving grandparent undertaking grandparenting functions. There is an undefined term. But I don't think that that turns this situation into a de facto parentage. I just don't think that the statute was intended to be read this broadly.
>
> It could apply to a grandparent under certain circumstances. I don't think we have those circumstances here.
>
> So I am finding that the element of holding out has not been met, and the petitioner has not met her burden as to that element, so I am denying the petition.

Rep. of Proc. (RP) at 66-67.

The trial court denied Culver's petition. Upon reconsideration, the trial court amended its findings to note that "while continuing a relationship between the petitioner and the child is in the best interest of the child, this court finds that it is not in the best interest of the child to make this into a parent-child relationship." CP at 78 (citing RCW 26.26A.440(4)(g)). The trial court explained that Culver had, in the past, failed to respect the parenting boundaries established by

3

Noble leading to significant conflict which had the potential to be detrimental to RC. The trial

court found it was in the best interests of RC to continue visitation as scheduled but not to grant

Culver de facto parentage.

Culver appeals.

ANALYSIS

In 2005, the Washington Supreme Court established common law de facto parentage in

*In re Parentage of L.B.*, 155 Wn.2d 679, 122 P.3d 161 (2005). In 2018, the Washington

Legislature enacted an updated version of the Washington Uniform Parentage Act (WUPA)

based on the 2017 version of the Uniform Parentage Act (UPA) and establishing a procedure for

establishing de facto parentage. *In re Parentage of L.J.M.*, 15 Wn. App. 2d 588, 593-94, 476

P.3d 636 (2020). RCW 26.26A.440 is based on section 609 of the UPA (2017). It provides a

statutory path to legal parentage for de facto parents who are adults who with the consent and

encouragement of a legal parent have formed a strong parent-child relationship with a child. *In re*

*Parentage of J.D.W.*, 14 Wn. App. 2d 388, 397 n.3, 471 P.3d 228 (2020); *see* also UPA Unif.

Parentage Act (2017) § 609 cmt., 98 U.L.A. 80-81 (2019) ("Under this new section, an

individual who has functioned as a child's parent for a significant period such that the individual

formed a bonded and dependent parent-child relationship may be recognized as a legal parent.").

A petitioner claiming status as a de facto parent must establish each of the following

seven elements by a preponderance of the evidence:

> (a) The individual resided with the child as a regular member of the child's
> household for a significant period;

> (b) The individual engaged in consistent caretaking of the child;

4

(c) The individual undertook full and permanent responsibilities of a parent of the child without expectation of financial compensation;

(d) The individual held out the child as the individual's child;

(e) The individual established a bonded and dependent relationship with the child which is parental in nature;

(f) Another parent of the child fostered or supported the bonded and dependent relationship required under (e) of this subsection; and

(g) Continuing the relationship between the individual and the child is in the best interest of the child.

RCW 26.26A.440(4). If the petitioner demonstrates each of the above seven substantive elements by a preponderance of the evidence, then "the court shall adjudicate the [petitioner] to be a parent of the child." RCW 26.26A.440(4).

We review questions of law and statutory interpretation de novo and rulings concerning the placement of a child for abuse of discretion. *In re Parentage of J.A.B.*, 146 Wn. App. 417, 422, 191 P.3d 71 (2008). We review the trial court's findings of fact for substantial evidence and consider the conclusions of law de novo, ensuring they properly flow from the findings. *In re Custody of SA-M*, 17 Wn. App. 2d 939, 952, 489 P.3d 259 (2021). "[A]n appellate court considers the evidence in a light most favorable to the prevailing party to determine if a rational trier of fact could find the fact more likely than not to be true." *Id*. We will not review a trial court's credibility determinations or reweigh the evidence. *In re Custody of J.E.*, 189 Wn. App. 175, 183, 356 P.3d 233 (2015).

Culver argues that the trial court erred in concluding that she had not alleged facts sufficient to satisfy the requirements in RCW 26.26A.440(4)(d) and (g) that she held RC out as her own child. We disagree.

Culver contends that the trial court erroneously concluded that RCW 26.26A.440 does not extend to grandparents. We agree with Culver's argument that RCW 26.26A.440 may extend to grandparents. However, the record here shows that the trial court's determination was not based on a misinterpretation of the statute but rather on a reasonable interpretation of the evidence.

In *Walker v. Riley*, 19 Wn. App. 2d 592, 595, 498 P.3d 33 (2021), Division 3 of this court held that a grandmother sufficiently proved that she held her granddaughter out as her own child to establish standing for her de facto parentage petition. The court explained, "[T]he element of 'holding out' a child as one's own does not require a petitioner to claim that they are a biological parent. Instead, it requires the petitioner to prove that she held herself out to the public in a parental capacity as opposed to a caretaker." *Id*. "Whereas a person who holds themselves out as a parent will make major decisions for a child, such as education, extracurricular activities, religion, health care, and residence, a caretaker will not." *Id*. at 604. Holding a child out as one's own requires that one holds themselves out as a person responsible for parenting the child. *Id*. at 605. A petitioner may satisfy the holding out element even if others knew that she is not the child's biological parent. *Id*.

Here, the trial court did not erroneously base its finding on the fact that Culver is RC's grandparent, as Culver contends on appeal. Rather, the trial court carefully considered the evidence presented as to the nature of the relationship between Culver and RC. The trial court's oral ruling reflects as much: "[The statute] could apply to a grandparent under certain circumstances. I don't think we have those circumstances here." RP at 67.

6

And the trial court's finding that Culver did not hold RC out as her own child is supported by substantial evidence. There is no doubt that the evidence establishes that Culver and RC have a close bond. But the trial court did not err by finding that bond to be a grandparent-grandchild role as opposed to a parent-child relationship. There is no evidence that Culver made major decisions for RC such as education, religion, healthcare, or extracurricular activities. While Culver clearly supported RC in her endeavors—helping her with homework, attending her performances, taking her to doctor appointments—this was done primarily as assistance to RC's father who struggled with his own health and out of an affection for RC.

While we acknowledge the supportive role Culver has undeniably played in RC's life, particularly in light of the loss of RC's father and RC's previous established routines, the trial court's finding that Culver did not hold RC out as her own child is supported by substantial evidence. Despite Culver's desire to have this court reweigh the evidence underlying this factor, that is not the role of our court. *J.E.*, 189 Wn. App. at 183. Accordingly, the trial court did not err by concluding that Culver had not satisfied all the statutory requirements under RCW 26.26A.440 and denying her petition for de facto parentage.

Culver also argues that the trial court misapplied the final factor under RCW 26.26A.440(4). Because we affirm the trial court's denial based on her failure to satisfy the holding out factor, we do not reach this issue.

ATTORNEY FEES

Noble argues that she is entitled to an award of reasonable attorney fees and costs under RAP 18.1(a) and RCW 26.09.140. RCW 26.09.140 grants us discretion to grant attorney fees on appeal in dissolution proceedings. An award of attorney fees under RCW 26.09.140 is based on a

consideration of "'the parties' relative ability to pay' and 'the arguable merit of the issues raised on appeal.'" *In re Marriage of Muhammad*, 153 Wn.2d 795, 807, 108 P.3d 779 (2005) (quoting *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998)). Accordingly, financial affidavits are required for us to consider Nobel's request for attorney fees. RAP 18.1. Neither party timely filed financial affidavits. RAP 18.1. Accordingly, we deny the request for attorney fees under RAP 18.1 and RCW 26.09.140.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, J.

Glasgow, C.